# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1438

_____

Advanta USA, Inc., formerly known as    *
Garst Seed Co.,    *
   *
Petitioner,    *
   *   On Petition for Review of an
v.    *   Order of the Occupational Safety
   *   and Health Review Commission.
Elaine L. Chao, Secretary of Labor,    *
United States Department of Labor,    *
   *
Respondent.    *
_____    *
   *
American Seed Trade Association,    *
Incorporated,    *
   *
Amicus on Behalf of Petitioner.   *

_____

Submitted: September 8, 2003

Filed: December 1, 2003

_____

Before WOLLMAN, BOWMAN, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

The United States Department of Labor (DOL) cited Advanta USA, Inc. (Advanta) for violating the Occupational Safety and Health Administration's (OSHA)

Field Sanitation Standard (Standard), 29 C.F.R. § 1928.110, by failing to place toilet and handwashing facilities in the middle of cornfields for seasonal workers. An administrative law judge (ALJ) and the Occupational Safety and Health Review Commission (OSHRC) affirmed the citation. Because we conclude the DOL's interpretation of the Standard is unreasonable, we vacate the OSHRC's order and set aside the citation.

## I.    BACKGROUND

Advanta, a Delaware corporation with its principal place of business in Iowa, produces and sells hybrid seed corn. In 2001, Advanta contracted with Illinois farmers to grow seed corn used in hybrid seed production for human consumption. Under these contracts, Advanta is responsible for detasseling[1] and harvesting the crop. Advanta uses a machine to cut the tops off corn stalks, and follows later with "high-clearance, four-wheel drive machines" to remove about fifty percent of the tassels. Advanta then hires seasonal workers to walk the corn rows to finish the detasseling process by hand-pulling the remaining tassels. Detasseling is a critical part of the hybrid seed corn production process, and must be accomplished completely and promptly at the peak pollination period.

The Standard requires that toilet and handwashing facilities (facilities) "be accessibly located and in close proximity to each other. The facilities shall be located within a one-quarter-mile walk of each hand laborer's place of work in the field." 29 C.F.R. § 1928.110(c)(2)(iii). A terrain exception exists to the one-quarter-mile walk requirement: "Where due to terrain it is not feasible to locate facilities as required above, the facilities shall be located at the point of closest vehicular access." Id. § 1928.110(c)(2)(iv). Advanta's detasselers worked in fields with one-half-mile to

---

[1]Detasseling means removing tassels from the tops of corn stalks in designated female rows of corn so other rows of selected male stalks will pollinate the detasseled female stalks.

one-mile rows of corn. Taking advantage of the Standard's terrain exception, Advanta placed facilities wherever Advanta could find vehicular access, knowing detasselers would not always be within a one-quarter-mile walk of the facilities. However, Advanta placed facilities as close to where the detasselers worked without actually placing the facilities in the middle of the cornfields. Facilities were located at one end of some rows and both ends of other rows. In certain fields, detasselers were, at times, more than a one-quarter-mile walk from the facilities for twenty to twenty-five minutes during a round trip of detasseling.

The DOL's Wage and Hour Division investigated Advanta's Illinois fields, and issued a citation to Advanta because "toilet and handwashing facilit[ies] for use by employees engaged in hand-labor operations were not located within 1/4 [] mile walk of each hand-laborer's place of work in the field." After Advanta contested the citation, an ALJ with the OSHRC conducted a hearing on the citation. Advanta relied on the terrain exception, arguing it is infeasible to transport toilets into a cornfield, because it would compromise the integrity of the seed corn production process by destroying some of the crop and the field's "isolation," thereby disrupting the distribution of plants and reducing maximum pollination. The ALJ rejected Advanta's terrain exception defense, deciding Advanta did not prove it was infeasible to comply with the Standard. The ALJ affirmed the "1/4 mile walk" violation and assessed a $1,000 penalty.[2] The ALJ's decision became a final order of the OSHRC when no commissioner granted Advanta's petition for review. Because Advanta's principal place of business is in Iowa, Advanta brought its petition for review in this court. See 29 U.S.C. § 660(a) (judicial review authorized in circuit where principal office located).

---

[2]Because this case involves the DOL's interpretation of the Standard's terrain exception, further discussion of the ALJ's decision is unwarranted.

## II.     DISCUSSION

### A.     Standard of Review

We normally afford substantial deference to the DOL's interpretation of the Standard, but "no deference is due if the interpretation is contrary to the regulation's plain meaning." In re Old Fashioned Enters., Inc., 236 F.3d 422, 425 (8th Cir. 2001). The Supreme Court has cautioned courts to be "hesitant to substitute an alternative reading for the [agency]'s unless that alternative reading is compelled by the regulation's plain language or by other indications of the [agency]'s intent at the time of the regulation's promulgation." Gardebring v. Jenkins, 485 U.S. 415, 430 (1988). "Deference is due when an agency has developed its interpretation contemporaneously with the regulation, when the agency has consistently applied the regulation over time, and when the agency's interpretation is the result of thorough and reasoned consideration." Sioux Valley Hosp. v. Bowen, 792 F.2d 715, 719 (8th Cir. 1986). The DOL's interpretation is not conclusive, and we are not necessarily bound by the DOL's interpretation of the Standard. See Newton v. Chater, 92 F.3d 688, 693 (8th Cir. 1996). If the DOL's interpretation of its own regulation is unreasonable, we are free to reject it. See Staege v. United States Parole Comm'n, 671 F.2d 266, 268 (8th Cir. 1982).

### B.     DOL's Interpretation

Congress passed the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-78, "to assure so far as possible every [worker] in the Nation safe and healthful working conditions and to preserve our human resources." Id. § 651(b). To achieve these laudable goals, Congress authorized the Secretary of Labor "to set mandatory occupational safety and health standards." Id. §§ 651(b)(3), 655. After years of litigation to force OSHA to issue a standard to protect agricultural workers, see Preamble to OSHA's Field Sanitation Standard, 52 Fed. Reg. 16050, 16050-53 (May 1, 1987); Nat'l Cong. of Hispanic Am. Citizens v. Marshall, 626 F.2d 882 (D.C. Cir. 1979), OSHA promulgated the Standard to require employers to provide

agricultural workers with basic sanitary working conditions.  See 52 Fed. Reg. at 16055.  The Standard states, in relevant part, the following:

>       iii.  Toilet and handwashing facilities shall be accessibly located and in close proximity to each other.  The facilities shall be located within a one-quarter-mile walk of each hand laborer's place of work in the field.

>       iv.  Where due to terrain it is not feasible to locate facilities as required above, the facilities shall be located at the point of closest vehicular access.

29 C.F.R. § 1928.110(c)(2).  The Standard does not define the terrain exception contained in section 1928.110(c)(2)(iv).  The meaning of the term "terrain" is not clear.  Thus, we will consult the Standard's Preamble to decipher the ambiguous language.  Cf. Albemarle Corp. v. Herman, 221 F.3d 782, 786 (5th Cir. 2000) (Preamble consulted when regulation is ambiguous).

When issuing the Standard in 1987, OSHA addressed the feasibility and costs of placing toilets in the middle of fields.  52 Fed. Reg. at 16074-75.  During the rulemaking process, OSHA received no comments questioning the technological feasibility of meeting the Standard.  However, OSHA recognized special circumstances complicated the implementation of the toilet requirement for seed production activities.  Id. at 16074.  Specifically, OSHA received the following comment from the American Seed Trade Association (ASTA)[3]:

---

[3]ASTA, a trade organization representing approximately 800 companies involved in seed corn production in North America, filed a brief as *amicus curiae* in support of Advanta.  ASTA maintains "[t]his is a case of first impression concerning the application of the infeasibility exception due to terrain.  Before this case, there has not been an administrative or judicial challenge to the long-standing industry-wide practice of utilizing the 'practical solution' of placing toilet facilities at 'the closest point of vehicular entry' where 'due to the terrain' it is not feasible to place the

Employees in seed production activities move through a field at a rapid pace. In many cases, employees ride on vehicles with platforms and perform jobs from this location. They spend very little time in any one area of a field. . . . There are serious problems involved in set-up, servicing and pickup of these facilities. Most fields are not easily accessed by vehicles. Fences pose entrance and exit barriers and there are other crops grown contiguous to these fields.

Id. at 16074-75.

In response to ASTA's comment, OSHA wrote the following:

OSHA has addressed this concern by incorporating language into the standard that permits the facilities to be placed at the 'closest point of vehicular access' when it is infeasible to comply with the 1/4 mile requirement. For example, although it is theoretically technologically feasible to meet the 1/4 [mile] requirement for employees working on mobile platforms or trailer beds (e.g., by mounting the toilet on the platform, by placing toilets every 1/4 mile in the field, or by towing the toilet along with the platform), the practical solution is to place the toilet at the point of vehicular entry to the field. Thus, as the employees are transported within the field, they will frequently have access to the toilet. It must be noted, however, that if the field is large and has multiple access points, it may be appropriate to provide more than one facility. OSHA has determined that compliance with this provision is technologically feasible.

Id. at 16075. Advanta and ASTA contend this language controls the interpretation of the Standard's terrain exception as it applies to seed production activities. Advanta argues it complied with the Standard by placing facilities at the points of closest vehicular access. The DOL contends the practical solution discussed in the Preamble does not apply to Advanta's seed production activities. The DOL asserts the practical

facilities any nearer to the workers."

-6-

solution only applies to detasseling operations where the employees work on moving vehicles. Thus, the DOL asks us to focus on general language in the Preamble.

Elsewhere in the Preamble, OSHA explained the Standard's terrain exception in general terms:

> In paragraph (c)(2)(iv), OSHA provides an exception to the requirement that facilities be located in the field by allowing facilities to be located at the point of closest vehicular access where, due to terrain, it is not feasible to locate them within a quarter-mile-walk of each employee. OSHA recognizes that there are some fields, located for example, on steep mountain sides, river deltas or wetlands and the like, into or on which portable facilities cannot be placed. In some of these locations, soil conditions may prevent, or local public health regulations may prohibit the use of an alternative to the portable facility, such as a sanitary privy. In addition, there may be rare occasions when the facilities temporarily cannot be placed or located in ordinary level fields as, for example, following unusually heavy rains that make the ground too soggy to support the vehicles that transport the facilities. Nevertheless, workers in these fields need the protection provided by sanitation facilities as much as workers in other fields.
>
> Therefore, OSHA is requiring the facilities to be placed as near as physically possible to the workers, which under such circumstances would be at the point of closest vehicular access.

Id. at 16090. The DOL argues this general language controls the interpretation of the Standard's terrain exception and its application to Advanta. The DOL contends the specific language in the Preamble addressing seed production activities has no bearing on this case. The DOL maintains Advanta can only use the terrain exception when it can prove its seed production activities are located on extreme terrain.[4]

---

[4]The ALJ similarly relied on the general language in the Preamble when deciding whether Advanta proved it had complied with the terrain exception in

Simply reading the Preamble language to which the DOL directs us spawns this question: How widespread are seed production activities on steep mountain sides, river deltas, wetlands, or other such extreme terrain? The record does not directly answer this inquiry, but common sense would indicate seed production on such extreme terrain is rare, and probably non-existent. We find it curious that the DOL focuses our attention on general language in the Preamble when OSHA in another section of the Preamble specifically addressed the exact issue at the heart of this appeal, *i.e.*, the feasibility in seed production of placing toilets in the middle of fields.

When the Standard was issued, OSHA provided a contemporaneous explanation of how the Standard applies to seed production activities. Although OSHA referenced employees who work on mobile platforms or trailer beds, OSHA did not intimate the practical solution for seed production activities would not apply when employees walked the fields. It is important to remember ASTA's comment–which generated OSHA's response–focused on the practical issues surrounding the logistics of placing facilities in seed production fields. Although ASTA also specifically referenced employees who ride on platforms, that sentence simply modified the first sentence, which stated "[e]mployees in seed production activities move through a field at a rapid pace." We cannot read this statement, consistent with ASTA's logistical concerns, to exclude detasselers who walk the fields. Thus, we conclude neither ASTA nor OSHA sought to limit the application of the practical solution to seed production activities using only riding employees.

The DOL's current interpretation of the Standard as it relates to Advanta thwarts the effect of the practical solution chosen in 1987. We can find no evidence the DOL has consistently interpreted the Standard to require seasonal seed corn

---

section 1928.110(c)(2)(iv). Focusing on the general language in the Preamble, the ALJ interpreted the terrain exception to apply only to extreme terrain. The ALJ did not even mention OSHA's specific comment regarding seed production activities.

operations to place facilities in the middle of cornfields. The DOL's delinquent assertion of such a position further diminishes any deference. See Gardebring, 485 U.S. at 435 (O'Connor, J., dissenting) (deference given to agency interpretation substantially diminished when not consistent or longstanding) (quoting S.E. Cmty. College v. Davis, 442 U.S. 397, 412 n.11 (1979)). Neither has the DOL presented evidence or argument to establish a logical or reasonable basis for deviating from OSHA's 1987 specific and practical application of the Standard to seed production field workers. We see no reason to reject OSHA's contemporaneous explanation in favor of the DOL's current interpretation.[5]

We also find it curious that the DOL's interpretation of the Standard would require a seed company to place facilities in cornfields for seasonal corn detasselers who are never more than a half hour from a facility, while a seed company would not have to provide facilities at all–whether in the field or at a point of closest vehicular access–for seasonal corn detasselers who work three hours or less each day. See 29 C.F.R. § 1928.110(c)(2)(v) ("Toilet and handwashing facilities are not required for employees who perform field work for a period of three (3) hours or less (including transportation time to and from the field) during the day."). The DOL's decision to interpret the Standard in such a confusing manner further convinces us the DOL's interpretation of the Standard is unreasonable and is unworthy of deference and enforcement against Advanta.

Based on this record, it is undisputed Advanta placed facilities at the points of closest vehicular access. Since Advanta complied with the Standard as reasonably

---

[5]By all indications, OSHA allowed common sense to prevail in 1987 by authorizing a practical solution by not forcing seed companies to place facilities in the middle of cornfields for the benefit of seasonal detasselers. In 1764, Voltaire remarked "[c]ommon sense is not so common." John Bartlett, Familiar Quotations 343:18 (15th ed. 1980). Voltaire's observation still rings true.

interpreted by OSHA when OSHA issued the standard in 1987, the citation against Advanta cannot stand.

## III.   CONCLUSION

We decide the DOL's unreasonable interpretation of the Standard's application to Advanta in this case requires reversal.  Thus, we grant Advanta's petition, vacate the OSHRC's order, and set aside the citation against Advanta.

_____