# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2191

_____

| | | |
|---|---|---|
| Hilda Solis, | * | |
| Secretary of Labor, United States | * | |
| Department of Labor,[1] | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| Summit Contractors, Inc., | * | |
| | * | |
| Respondent, | * | Petition for Review from the |
| | * | Occupational Safety and |
| Occupational Safety and Health | * | Health Review Commission. |
| Review Commission, | * | |
| | * | |
| Nominal Respondent. | * | |
| | * | |
| | * | |
| _____ | * | |
| | * | |
| Building and Construction Trades | * | |
| Department, AFL-CIO; National | * | |
| Construction Alliance, | * | |
| | * | |
| Amici on Behalf of | * | |
| Petitioner, | * | |
| | * | |
| National Association of Home | * | |
| Builders; Associated General | * | |

_____

[1]Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Hilda Solis is substituted for Elaine L. Chao as petitioner.

Contractors of America;            *
Associated Builders and            *
Contractors; National Federation   *
of Independent Businesses Legal    *
Foundation; Contractors'           *
Association of Greater New York;   *
Texas Association of Builders;     *
Greater Houston Builders           *
Association,                       *
                                   *
        Amici on Behalf of    *
        Respondent.           *

_____

Submitted: January 17, 2008
Filed: February 26, 2009

_____

Before BYE, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

The Occupational Safety and Health Review Commission ("OSHRC") held that the Secretary of Labor's ("Secretary") multi-employer worksite policy for "controlling" employers ("controlling employer citation policy") violated agency regulation 29 C.F.R. § 1910.12(a). The controlling employer citation policy provides that the Occupational Safety and Health Administration ("OSHA") may issue citations to general contractors at construction sites who have the ability to prevent or abate hazardous conditions created by subcontractors through the reasonable exercise of supervisory authority regardless of whether the general contractor created the hazard ("creating employer citation policy") or whether the general contractor's own employees were exposed to the hazard ("exposing employer citation policy"). The

Secretary filed a petition for review.  We grant the petition, vacate OSHRC's order and remand for further proceedings.

## I.  BACKGROUND

Because the development of the controlling employer citation policy provides the framework and context for this case, we start with a historical review of the policy before detailing the relevant factual background.

### A.  The Development of the Controlling Employer Citation Policy

Congress enacted the Occupational Safety and Health Act of 1970 ("OSH Act") to "establish[] a comprehensive regulatory scheme designed 'to assure so far as possible . . . safe and healthful working conditions' for 'every working man and woman in the Nation.'"  *Martin v. OSHRC*, 499 U.S. 144, 147 (1991) (quoting 29 U.S.C. § 651(b)).  The OSH Act assigns distinct regulatory tasks to two different administrative actors:  the Secretary and OSHRC.  *Id.*  The Secretary, through OSHA, creates and enforces workplace health and safety standards.  *Id.*; *see* Delegation of Authority and Assignment of Responsibilities for Occupational Safety and Health Programs, 48 Fed. Reg. 35,736 (Aug. 5, 1983) (delegating authority to OSHA).  If the Secretary determines that an employer failed to comply with such a standard, the Secretary may issue a citation and assess a monetary penalty.  29 U.S.C. §§ 658-659, 666; *Martin*, 499 U.S. at 147.  OSHRC carries out the adjudicatory functions of the OSH Act.  29 U.S.C. § 651(b)(3); *Martin*, 499 U.S. at 147.

The OSH Act describes an employer's duties as follows:

> (a) Each Employer —
> > (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

> (2) shall comply with occupational safety and health standards promulgated under this chapter.

29 U.S.C. § 654. Subsection (a)(1) creates a general duty running only to an employer's own employees, while subsection (a)(2) creates a specific duty to comply with standards for the good of all employees on a multi-employer worksite. *See Marshall v. Knutson Constr. Co.*, 566 F.2d 596, 599-600 (8th Cir. 1977); *United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 982-83 (7th Cir. 1999); *Teal v. E.I. DuPont de Nemours & Co.*, 728 F.2d 799, 803-04 (6th Cir. 1984); *Brennan v. OSHRC*, 513 F.2d 1032, 1037-38 (2d Cir. 1975).

Prior to the OSH Act, the Secretary had promulgated health and safety standards for construction sites for federally funded and federally assisted projects under the Construction Safety Act of 1969. 40 U.S.C. § 333, *incorporated into* 40 U.S.C. §§ 3704, 3705. As part of OSHA's inception, Congress authorized the Secretary to adopt numerous preexisting federal standards, including those of the Construction Safety Act, as OSHA standards without notice-and-comment rulemaking during a period of two years. 29 U.S.C. § 655(a); *see* 29 C.F.R. §§ 1910.12-1910.16 (Sections 1910.13-1910.15 have been merged into a single section, § 1910.15, *see* 58 Fed. Reg. 35,306, 35,306 (June 30, 1993).). In May 1971, the Secretary used his authority to adopt these established construction standards as OSHA standards when he promulgated 29 C.F.R. § 1910.12(a), the regulation at issue in this case, which provides:

> The standards prescribed in part 1926 of this chapter are adopted as occupational safety and health standards under section 6 of the Act and shall apply, according to the provisions thereof, to every employment and place of employment of every employee engaged in construction work. Each employer shall protect the employment and places of employment of each of his employees engaged in construction work by complying with the appropriate standards prescribed in this paragraph.

-4-

29 C.F.R. § 1910.12(a); *see* 29 C.F.R. §§ 1910.13-1910.16 (adopting other preexisting federal standards).

Nine days before the Secretary issued this regulation, OSHA published its first Field Operations Manual. This manual established the Secretary's multi-employer worksite policy, a policy that indicates which employers at a multi-employer construction site OSHA could cite for violations. According to this multi-employer worksite policy, OSHA may cite employers who exposed their own employees to hazardous conditions or who created a hazardous condition "endangering employees (whether his own or those of another employer) . . . ." OSHA, Field Operations Manual ¶ 10, at VII-6–8 (May 20, 1971). Hence, the manual's initial multi-employer worksite policy adopted the creating employer and the exposing employer citation policies, but not the controlling employer citation policy.[2]

Initially, OSHRC narrowly construed the multi-employer worksite policy. In *City Wide Tuckpointing Serv. Co.*, OSHRC held that the Secretary could not issue a citation to a subcontractor who created a hazard but whose own employees were not exposed to or affected by the hazard. 3 OSAHRC 194, 195-96, 201 ¶ 6 (1973). In *Gilles & Cotting, Inc.*, a scaffold used by a subcontractor had collapsed and killed two of the subcontractor's employees. 4 OSAHRC 1080, 1080 (1973). None of the employees of the general contractor, Gilles & Cotting, Inc., used or was affected by the scaffold. Nevertheless, on January 29, 1972, the Secretary issued Gilles & Cotting a citation "because as general contractor it had control of the job site . . . ." *Id.* at 1081. This was the first time the Secretary issued a citation based on the controlling employer theory. On review, OSHRC found that Congress intended that the obligations of 29 U.S.C. § 654(a) were "predicated upon the existence of an employment relationship" because § 654(a) imposes duties only on "each employer."

---

[2]Both the creating employer and the controlling employer citation policies allow OSHA to issue citations to the employer for violations that do not directly affect the employer's own employees.

*Id.* at 1081-82.  Thus, OSHRC held that an employer is responsible for the safety and health of only those employees who work for the employer.  Because Gilles & Cotting's own employees were not directly affected by the scaffold violation, OSHRC vacated the citation.  Other OSHRC cases reaffirmed the *City Wide* and *Gilles* decisions "that the intent of the [OSH] Act is to place responsibility for maintaining safe working conditions upon those employers who have endangered [their own] employees . . . ." *Hawkins Constr. Co.*, 8 OSAHRC 569, 570 (1974); *accord Martin Iron Works, Inc.*, 9 OSAHRC 695 (1974); *HRH Constr. Corp.*, 8 OSAHRC 841 (1974).

By 1975, two federal courts of appeals began to question these OSHRC decisions.  For example, in *Brennan v. OSHRC*, the Second Circuit rejected OSHRC's interpretation of § 654(a) and stated that § 654(a)(2) was "in no way limited to situations where a violation of a standard is linked to exposure of *his* employees to the hazard."  513 F.2d at 1038.  There, the court held that § 654(a)(2) permitted the Secretary to issue citations based on the controlling employer and creating employer citation policies, rejecting the prohibition imposed on these policies by *City Wide* and *Gilles*.  *Id.*  Likewise, in *Anning-Johnson Co. v. OSHRC*, the Seventh Circuit noted in dicta that: "[a]lthough it is not necessary for a decision in the present case, . . . we are not at all sure that a general contractor, who has no employees of his own exposed to a cited violation is necessarily excused from liability under the [OSH] Act."  516 F.2d 1081, 1091 n.21 (7th Cir. 1975).

In light of these decisions, OSHRC retreated from its position in *City Wide* and *Gilles*.  *See Anning-Johnson Co.*, 4 BNA OSHC 1193, 1197, 1975-1976 CCH OSHD ¶ 20,690 (OSHRC May 12, 1976) ("We find ourselves in general agreement with the principles enunciated in the cogent opinions of the Second and Seventh Circuit Courts of Appeals.").  OSHRC announced its revised position that a contractor who has either created a hazard or controls a hazardous condition has a duty under § 654(a)(2) to comply with OSHA standards even if the contractor's own employees are not exposed

to the hazard. *Id.* at 1197-99; *Grossman Steel & Aluminum Corp.*, 4 BNA OSHC 1185, 1188, 1975-1976 CCH OSHD ¶ 20,691 (OSHRC May 12, 1976).

In *Anning-Johnson*, OSHRC stated:

[a]lthough not an issue in this case, we are constrained to mention this Commission's position with respect to the third possible situation. Under this third set of circumstances, we are dealing with (1) a contractor that has either created a hazard or controls a hazardous condition and (2) the only employees having access to the hazard are those of different contractors engaged in the common undertaking. We consider such a contractor to have a duty under [29 U.S.C. § 654(a)(2)] to comply fully with the standards. . . . Furthermore, we note that typically a general contractor on a multiple employer project possesses sufficient control over the entire worksite to give rise to a duty under [§ 654(a)(2)] of the Act either to comply fully with the standards or to take the necessary steps to assure compliance.

4 BNA OSHC at 1199.

In *Grossman Steel*, OSHRC asserted:

the general contractor normally has responsibility to assure that the other contractors fulfill their obligations with respect to employee safety which affect the entire site. The general contractor is well situated to obtain abatement of hazards, either through its own resources or through its supervisory role with respect to other contractors. It is therefore reasonable to expect the general contractor to assure compliance with the standards insofar as all employees on the site are affected. Thus, we will hold the general contractor responsible for violations it could reasonably have been expected to prevent or abate by reason of its supervisory capacity.

4 BNA OSHC at 1188.

Throughout this period, the Secretary continued to address the multi-employer worksite policy. In 1974, after OSHRC's *City Wide* and *Gilles* decisions, OSHA altered its Field Operations Manual such that the multi-employer worksite policy included only the exposing employer citation policy. OSHA, Field Operations Manual X-14 (Jan. 22, 1974). In April 1976, after the decisions by the Second and Seventh Circuits, the Secretary sought to implement an OSHA regulation for its multi-employer worksite policy that would include the creating employer and the controlling employer citation policies. The Secretary requested public comment on such a proposed regulation. Citation Guidelines in Multi-Employer Worksites Request for Public Comment Notice, 41 Fed. Reg. 17,639, 17,639-40 (Apr. 27, 1976). However, before the comment period ended on May 27, 1976, OSHRC had decided *Anning-Johnson* and *Grossman Steel*, which allowed the Secretary to issue citations based on the creating employer and controlling employer citation policies. After these decisions, the Secretary discontinued his efforts to promulgate through informal rulemaking an OSH Act regulation for the multi-employer worksite policy.

After 1976, the Secretary occasionally altered the multi-employer worksite policy. In 1981, the correcting employer citation policy was added. It allowed OSHA to issue citations to the employer responsible for correcting the hazard even if its own employees were not exposed to the hazard. OSHA, Field Operations Manual OSHA Instruction CPL 2.49 (Dec. 23, 1981). In 1994, the multi-employer worksite policy was amended to add the creating employer and the controlling employer citation policies. OSHA, Field Inspection Reference Manual OSHA § V.C.6 (Sept. 26, 1994). The current OSHA manual was published in 1999, and its multi-employer worksite policy contains the same four citation policies—exposing employer, correcting employer, creating employer and controlling employer—as the 1994 version. *See* OSHA, Field Inspection Reference Manual OSHA Instruction CPL 2.103 (Dec. 10, 1999).

Since *Anning-Johnson* and *Grossman Steel*, general contractors have challenged the Secretary's authority to cite them for violations when their own employees are not exposed to any hazards related to the violations. *See, e.g.*, *Universal Constr. Co., Inc. v. OSHRC*, 182 F.3d 726, 728 (10th Cir. 1999) (challenging the controlling employer citation policy); *R.P. Carbone Constr. Co. v. OSHRC*, 166 F.3d 815, 821 (6th Cir. 1998) (same); *IBP, Inc. v. Herman*, 144 F.3d 861, 865 (D.C. Cir. 1998) (same); *Knutson*, 566 F.2d at 599 (same); *Pitt-Des Moines*, 168 F.3d at 976-85 (challenging the creating employer citation policy); *Beatty Equip. Leasing Inc. v. Sec'y of Labor*, 577 F.2d 534 (9th Cir. 1978) (same). In *Knutson*, this circuit held that a general contractor, as the controlling employer, has a duty under § 654(a)(2) to protect not only its own employees from safety hazards but all the employees engaged at the worksite. 566 F.2d at 599. *But see Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 710-11 (5th Cir. 1981) (holding that § 654(a)(2) does not extend employers' responsibility beyond their own employees). We, therefore, have found that the Secretary has statutory authority for the multi-employer worksite policy, including the controlling employer citation policy. *See Knutson*, 566 F.2d at 599.

Recently, the United States Court of Appeals for the District of Columbia Circuit has questioned whether the Secretary's controlling employer citation policy violates OSHA's regulatory framework. *See Anthony Crane Rental, Inc. v. Reich*, 70 F.3d 1298, 1306 (D.C. Cir. 1995); *see also IBP*, 144 F.3d at 865-66. In *Anthony Crane*, the court stated in dicta that "it is not clear to us that the multi-employer [worksite] doctrine is consistent with the Secretary's own construction industry regulation, 29 C.F.R. § 1910.12(a). . . . [T]he language of § 1910.12 . . . is in marked tension with the multi-employer [worksite] doctrine . . . ." 70 F.3d at 1306. However, because it was unnecessary to the outcome of the case, the court indicated that "we leave to a later date the critical decision of whether to apply the multi-employer [worksite] doctrine where an employer has been cited under the construction industry regulations of 29 C.F.R. § 1910.12." *Id.* at 1307. To date, the only court to have addressed this issue has held that the Secretary's multi-employer worksite policy did

not exceed the scope of § 1910.12(a). *Comm'r of Labor v. Weekley Homes, L.P.*, 609 S.E.2d 407, 414-15 (N.C. Ct. App. 2005).

## B.     Factual Background

In this case, Summit Contractors, Inc. ("Summit") was the general contractor for the construction of a college dormitory in Little Rock, Arkansas. Because Summit had subcontracted the entire project, it had only four employees at the construction site: a project superintendent and three assistant superintendents. Summit subcontracted the exterior brick masonry work to All Phase Construction, Inc. ("All Phase"). On two or three separate occasions, Summit's project superintendent had observed All Phase employees operating without personal fall protection on scaffolds that lacked guardrails. The project superintendent had advised All Phase to correct these problems. However, when All Phase's employees moved the scaffold to another location, they would again work without fall protection and without guardrails.

In June 2003, an OSHA Compliance Safety and Health Officer observed All Phase employees working on scaffolds over ten feet above the ground without fall protection or guardrails in violation of 29 C.F.R. § 1926.451(g)(1)(vii). Although it is undisputed that none of Summit's employees were exposed to any hazard created by the scaffold violation, the OSHA officer issued Summit a citation for violation of 29 C.F.R. § 1926.451(g)(1)(vii) based on the controlling employer citation policy.[3]

Summit contested the citation, and the matter was referred to an Administrative Law Judge ("ALJ"). Summit argued that § 1910.12(a) places a duty on employers to protect only its own employees, not those of any subcontractor. Therefore, according to Summit, § 1910.12(a) precludes the Secretary from citing controlling employers whose own employees were not exposed to the hazardous condition. The ALJ upheld

---

[3]The Secretary also cited All Phase for the violation under the exposing employer citation policy.

the citation and rejected Summit's position because § 1910.12(a) "does not prohibit application of an employer's safety responsibility to employees of other employers."

OSHRC granted review and issued three separate opinions. Although one of these opinions agreed with the ALJ, the other two held that § 1910.12(a) requires each employer to protect only its own employees and thereby precludes the controlling employer citation policy. Therefore, OSHRC vacated the citation, and its decision became the final order. Because the alleged violation occurred in Arkansas, the Secretary filed a petition for review in our court pursuant to 29 U.S.C. § 660(b). The Secretary argues that the plain language of § 1910.12(a) does not preclude the controlling employer citation policy and that the courts should give deference to the Secretary's interpretation of the regulation. Hence, we are required to address the "critical decision" recognized by the D.C. Circuit. *See Anthony Crane*, 70 F.3d at 1306.

## II.   DISCUSSION

### A.   Standard of Review

We will uphold OSHRC's factual findings if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 660(a); *Omaha Paper Stock Co. v. Sec'y of Labor*, 304 F.3d 779, 782 (8th Cir. 2002). Pursuant to the Administrative Procedure Act, "[w]e will uphold [OSHRC's] legal conclusions unless they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (citing 5 U.S.C. § 706(2)(A)).

"In situations in which the meaning of [regulatory] language is not free from doubt, the reviewing court should give effect to the agency's interpretation so long as it is reasonable, that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations." *Martin*, 499 U.S. at 150 (internal quotations and citation omitted) (alteration in original); *accord Chalenor v. Univ. of N. D.*, 291 F.3d

-11-

1042, 1046 (8th Cir. 2002) ("If the regulation is ambiguous, then we defer to any reasonable construction by the [agency], even though its interpretation might 'not be the best or most natural one by grammatical or other standards.'") (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991)).  In those instances in which the Secretary's interpretation differs from OSHRC's, we afford substantial deference to the Secretary's reasonable interpretation.  *Martin*, 499 U.S. at 158.  "[N]o deference is due if the interpretation is contrary to the regulation's plain meaning." *Advanta USA, Inc. v. Chao*, 350 F.3d 726, 728 (8th Cir. 2003) (quoting *In re Old Fashioned Enters., Inc.*, 236 F.3d 422, 425 (8th Cir. 2001)).  However, "[d]eference is due when an agency has developed its interpretation contemporaneously with the regulation, when the agency has consistently applied the regulation over time, and when the agency's interpretation is the result of thorough and reasoned consideration."  *Id.* (quoting *Sioux Valley Hosp. v. Bowen*, 792 F.2d 715, 719 (8th Cir. 1986)).

## B.    Regulatory Interpretation

In examining the meaning of § 1910.12(a), our inquiry begins with the regulation's plain language.  We look to see "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  "The Court will avoid an interpretation of a [regulation] that renders some words altogether redundant." *United States v. Alaska*, 521 U.S. 1, 59 (1997) (internal quotations omitted); *see Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. ---, 127 S. Ct. 2518, 2536 (2007) (cautioning against reading a regulation "in a way that makes part of it redundant"). We also should "avoid a [regulatory] construction that would render another part of the same [regulation] superfluous."  *United States v. Stanko*, 491 F.3d 408, 413 (8th Cir. 2007) (quoting *United States v. Gomez-Hernandez*, 300 F.3d 974, 979 (8th Cir. 2002)); *see Nat'l Ass'n of Home Builders*, 551 U.S. ---, 127 S. Ct. at 2535-36 (avoiding an interpretation that would render part of the regulation superfluous); *Jewett v. Comm'r*, 455 U.S. 305, 315-16 (1982) (same); *Dryden v. Lou Budke's Arrow Fin. Co.*, 661 F.2d 1186, 1189 (8th Cir. 1981) (same).  Any interpretation of §

1910.12(a) generally should conform to the accepted rules of grammar. *See, e.g.*, *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 131 (2002) (rejecting an interpretation of a statute that runs counter to basic rules of grammar). Applying these construction rules, we must now determine whether § 1910.12(a) precludes the Secretary from adopting the controlling employer citation policy.

The first sentence of § 1910.12(a) indicates that OSHA adopted the federal construction standards and that these standards now apply to all construction sites covered under OSHA rather than only federally funded and federally assisted construction contracts. The second sentence states:

> Each employer shall protect the employment and places of employment of each of his employees engaged in construction work by complying with the appropriate standards prescribed in this paragraph.

29 C.F.R. § 1910.12(a). The subject of this sentence is "each employer," the verb is "shall protect," and the objects are "employment" and "places of employment." The rest of the sentence contains prepositional phrases; a preposition serves to "link[] an object (a noun or noun equivalent) to another word in the sentence to show the relationship between them." *Chicago Manual of Style*, 187 § 5.162 (15th ed. 2003). In this case, the preposition "of" serves to link the objects, "employment" and "places of employment," to "each of his employees." Hence, grammatically reconstructed, the language of the regulation requires: (1) that an employer shall protect the employment of each of his employees ("part (1)") and (2) that an employer shall protect the places of employment of each of his employees ("part (2)").

In this case, the prepositional phrase "of each of his employees" serves as an adjective that narrows the meaning of "employment" and "places of employment." *See id.* at 188 § 5.166 ("A prepositional phrase can be used as a noun, . . . an adverb, . . . or an adjective . . . ."); *id.* at 165 § 5.66 (discussing limiting adjectives). Because the term "of each of his employees" limits the term "employment," part (1) provides

-13-

that an employer shall protect only the employment of his employees. Stated differently, part (1) provides that an employer shall protect only his employees.[4] However, this is not the end of the analysis. In part (2), the term "of each of his employees" limits the term "places of employment" such that the employer shall protect the places of employment where the employer actually has employees. *See Reich v. Simpson, Gumpertz & Heger, Inc.*, 3 F.3d 1, 4-5 (1st Cir. 1993) (holding that the plain language of § 1910.12(a) establishes a duty of employers to protect only those construction sites where they have employees). Unlike part (1), part (2) of the regulation does not limit the employer's duty to protect only the employer's own employees. Therefore, the plain language of part (2) does not preclude an employer's duty to protect the place of employment, including others who work at the place of employment, so long as the employer also has employees at that place of employment. *See Weekley Homes*, 609 S.E.2d at 415.

Summit contends that the regulation requires the employer to protect only "his employees." Because the creating employer, correcting employer and controlling employer citation policies permit OSHA to issue citations to employers when their own employees are not exposed to the hazard, Summit's reading of § 1910.12(a) effectively precludes these policies and only permits the exposing employer citation policy. Although part (1) may support this interpretation, part (2) must provide something different to avoid being superfluous to part (1). Summit argues that part (2) requires the employer to protect only his employees at their places of employment. This interpretation creates two problems. First, Summit's interpretation is contrary to the grammatical construction of the sentence because it requires the term "each of his employees" to be the object of the sentence, rather than a prepositional phrase that modifies the actual objects of the sentence. Second, Summit's interpretation would

---

[4]We do not agree with the Secretary's argument that "his employees" does not mean "*only* his employees." The natural reading requires us to read "his employees" as "*only* his employees." *Cf. Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 166 (2004) (holding that the "natural meaning" of "may seek contribution . . . during or following any civil action" is that contribution may *only* be sought then).

make the term "places of employment" redundant of the term "employment" and, therefore, superfluous. Under Summit's interpretation, part (2) provides nothing different from or in addition to part (1); instead, it makes the term "places of employment" a subset of the term "employment." Granted, there will be times in which the protection of "employment" will not be directly related to the protection of a "place[] of employment." For instance, an employee could be exposed to a dangerous condition during the course of employment but away from the worksite. However, the opposite is not true. Summit cannot provide and we cannot envision a situation where the protection of a "place of employment" will not be directly related to or encompassed by the protection of "employment." To give some independent meaning to the term "place of employment" would require the employer to protect others who work at that place of employment so long as the employer also has employees at that place of employment. Therefore, we reject Summit's interpretation and conclude that § 1910.12(a) is unambiguous in that it does not preclude OSHA from issuing citations to employers for violations when their own employees are not exposed to any hazards related to the violations.

Even if we were to find Summit's interpretation to be reasonable and that § 1910.12(a) was therefore ambiguous, we would defer to the Secretary's interpretation nonetheless. Summit contends that we should not give deference to the Secretary's interpretation of § 1910.12(a) because the Secretary did not adopt the controlling employer citation policy contemporaneously with the regulation and has not had a consistent multi-employer worksite policy since § 1910.12(a) was enacted. *See Advanta USA*, 350 F.3d at 728. However, Summit conflates the issues. We defer to the Secretary's interpretation of her regulation, § 1910.12(a), and not the Secretary's interpretation of her multi-employer worksite policy.[5] The Secretary's application of

_____

[5]Summit contends that we should only afford the Secretary's interpretation of § 1910.12(a) some weight under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). However, "[a]n agency's interpretation of the meaning of its own regulations is entitled to deference 'unless plainly erroneous or inconsistent with the regulation[.]'" *Nat'l Ass'n of Home Builders*, 127 S. Ct. at 2537-38 (quoting *Auer v. Robbins*, 519

the multi-employer worksite policy is only relevant to the extent that it sheds light on the Secretary's interpretation of § 1910.12(a).

First, the Secretary did not initially interpret § 1910.12(a) as limiting an employer's responsibility to its own employees. Contemporaneous with the enactment of the regulation in May 1971, OSHA issued its first Field Operations Manual that authorized the agency to cite employers who created a hazardous condition "endangering employees (whether his own or those of another employer) . . . ." OSHA, Field Operations Manual ¶ 10, at VII-6–8 (May 20, 1971). By adopting the creating employer citation policy, OSHA held employers responsible for OSHA violations even when their own employees were not exposed to any hazards related to the violations. OSHA also started to issue citations based on the controlling employer theory only eight months after the promulgation of § 1910.12(a). *See Gilles*, 4 OSAHRC at 1085.

Nonetheless, Summit argues that the Secretary did not initially intend § 1910.12(a) to extend an employer's liability beyond the employer's own employees because § 1910.12(a) did not adopt 29 C.F.R. § 1926.16 when it adopted the construction standards of the Construction Safety Act. Section 1926.16 is a regulation of the Construction Safety Act published in Subpart B of 29 C.F.R. § 1926 that contains language specifically extending an employer's liability beyond its own employees. When the Secretary issued § 1910.12(a), the regulation adopted "the standards" published in Subpart C and later subparts of 29 C.F.R. § 1926, which do not include § 1926.16. *See* 29 C.F.R. §§ 1910.11, 1910.12(c) (discussing which parts

---

U.S. 452, 461 (1997)). Also, we defer to the Secretary's interpretation of OSH Act regulations as urged by the Secretary in OSHRC adjudications. *Martin*, 499 U.S. at 156-57. Because the Secretary provided her interpretation of § 1910.12(a) at an OSHRC adjudication, we do not apply *Skidmore* deference to the Secretary's interpretation. However, we afford *Skidmore* deference to the Secretary's informal interpretations of the regulation such as those contained in the OSHA Field Operations Manual. *Id.* at 157.

of § 1926 are adopted). However, without more, the Secretary's failure to adopt § 1926.16 does not prove that the Secretary interpreted § 1910.12(a) to preclude her from extending an employer's liability beyond its own employees, especially when the Secretary adopted the creating employer citation policy in the 1971 OSHA Field Operations Manual and started to issue citations based on the controlling employer theory shortly after the regulation was enacted.

Second, we disagree with Summit's contention that the Secretary has not consistently applied her interpretation of § 1910.12(a) over time. Although the Secretary altered the multi-employer worksite policy to include only the exposing employer citation policy in its 1974 OSHA Field Operations Manual, the Secretary appears to have done so in response to OSHRC's *City Wide* and *Gilles* decisions, which held that the creating employer and controlling employer citation policies violated § 654(a)(2). Nonetheless, even after adopting this new multi-employer worksite policy, the Secretary continued to challenge the *City Wide* and *Gilles* decisions. *See Martin Iron Works*, 9 OSAHRC at 695; *HRH*, 8 OSAHRC at 841; *Hawkins*, 8 OSAHRC at 569. The Secretary had also requested public comment on a proposed regulation adopting the creating employer and the controlling employer citation policies. The Secretary appears to have done this in response to various federal court of appeals decisions indicating that § 654(a)(2) does not preclude the creating employer and the controlling employer citation policies. *See Brennan*, 513 F.2d at 1038; *Anning-Johnson*, 516 F.2d at 1091 n.21. The Secretary abandoned the informal rulemaking process after OSHRC's adjudications in *Anning-Johnson* and *Grossman Steel*, which established the creating employer and the controlling employer citation policies and held that the policies did not violate § 654(a)(2).[6] Thus, the

---

[6]The amici on behalf of Summit contend that the Secretary could not lawfully apply the multi-employer worksite policy without first adopting it through the informal rulemaking process of the Administrative Procedure Act. *See* 5 U.S.C. § 553. This argument may have some merit. *But see Universal Constr. Co.*, 182 F.3d at 728 n.2 (rejecting this argument). The Supreme Court has stated that Congress did not intend for OSHRC to use its "adjudicatory power to play a policymaking role,"

Secretary's actions during this time period may provide insight into the Secretary's, OSHRC's and several courts' interpretations of § 654(a)(2), but they do not provide insight into the Secretary's interpretation of § 1910.12(a). Therefore, because there is no evidence in the record that the Secretary has ever interpreted § 1910.12(a) to preclude her from holding an employer liable for OSHA violations that do not affect its own employees, we defer to the Secretary's reasonable interpretation that § 1910.12(a) does not preclude the controlling employer citation policy.

We find that the plain language of § 1910.12(a) does not preclude the Secretary's controlling employer citation policy. Even if the regulation were ambiguous, we would defer to the Secretary's reasonable interpretation. Therefore, OSHRC abused its discretion in determining that the controlling employer citation policy conflicted with § 1910.12(a), a legal conclusion that was not in accordance with the law.

---

*Martin*, 499 U.S. at 154, as it appears OSHRC did in *Anning-Johnson* and *Grossman Steel*. Therefore, the Secretary may be required to submit its multi-employer worksite policy to the informal rulemaking process, unless the multi-employer worksite policy is an interpretive rule or a statement of policy. *See Air Transp. Assoc. v. Fed. Aviation Admin.*, 291 F.3d 49, 55 (D.C. Cir. 2002); *Gen. Elec. Co. v. Envtl. Prot. Agency*, 290 F.3d 377, 382-85 (D.C. Cir. 2002). However, we decline to consider this issue because it was raised to this court by the amici and not by the parties. *See United States v. United Foods, Inc.*, 533 U.S. 405, 417 (2001) ("Just this Term we declined an invitation by an *amicus* to entertain new arguments to overturn a judgment, see *Lopez v. Davis*, 531 U.S. 230, 244, n.6 . . . (2001), and we consider it the better course to decline a party's suggestion for doing so in this case."); *Davis v. United States*, 512 U.S. 452, 457 n.* (1994) ("Although we will consider arguments raised only in an *amicus* brief, we are reluctant to do so when the issue is one of first impression . . . .") (citation omitted); *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 60 n.2 (1981) ("We decline to consider [the argument raised by the amici] since it was not raised by either of the parties here or below."); *Peltier v. Henman*, 997 F.2d 461, 475 (8th Cir. 1993) (same).

## C.     Alternative Arguments

Summit argues that the controlling employer citation policy is premised on an expansive definition of employer and employee in violation of the Supreme Court's direction in *Nationwide Mutual Insurance v. Darden*, 503 U.S. 318, 322-25 (1992). In *Darden*, the Supreme Court held that when Congress leaves the term "employee" insufficiently clear, courts are to construe the term according to the conventional master-servant relationship as understood by common-law agency doctrine. *Id.* at 322-23. Based on statements by Commissioner Cleary in his dissenting opinions, Summit believes that the controlling employer citation policy is premised on a broad definition of employer and employee rather than the common-law definition. After the *City Wide* and *Gilles* decisions, Commissioner Cleary contended for a broad multi-employer worksite policy because "[t]he definitions [of employee and employer] do not expressly require that ordinary employer-employee relationship be adhered to. The term 'employee' cannot be construed solely according to common law concepts of master and servant." *James E. Roberts Co. & Soule Steel Co.*, 7 OSAHRC 1005, 1007 (1974) (Cleary, Comm'r, dissenting in part); *see Hawkins*, 8 OSHRC at 572 (Cleary, Comm'r, dissenting) ("[T]he employees of a subcontractor should be considered the employees of the general, or prime contractor, for purposes of the [OSH] Act . . . ."). Summit contends that OSHRC adopted Commissioner Clearly's broad definition of employer and employee when it decided *Anning-Johnson* and *Grossman Steel*.

Summit misconstrues *Anning-Johnson* and *Grossman Steel*. Nothing in those opinions remotely indicates that OSHRC relied on a broad definition of employer or employee. Rather, OSHRC premised the controlling employer citation policy upon § 654(a)(2), which, unlike § 654(a)(1), does not base an employer's liability on the existence of an employer-employee relationship. *Anning-Johnson*, 4 BNA OSHC at 1198-99; *Grossman Steel*, 4 BNA OSHC at 1188; *see Knutson*, 566 F.2d at 599. Therefore, the controlling employer citation policy is not premised on an expansive definition of employer or employee and does not conflict with the *Darden* decision.

*See Sec'y of Labor v. Trinity Indus., Inc.*, 504 F.3d 397, 402 (3d Cir. 2007) (holding that the multi-employer worksite policy did not violate *Darden*).

Summit also argues that the Secretary has no legal authority for the controlling employer citation policy. However, we held in *Knutson* that § 654(a)(2) provides statutory authority for the controlling employer citation policy. *Knutson*, 566 F.2d at 599. We are bound by this decision unless the en banc court or the Supreme Court reaches a different result. *See United States v. Kent*, --- F.3d ---, 2008 WL 2631441, at *11 (8th Cir. July 7, 2008) ("[A] panel of this Court is bound by a prior Eight Circuit decision unless that case is overruled by the Court sitting en banc.") (quotation omitted) (alteration in original); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 838 (8th Cir. 1997) ("[T]his rule does not apply when the earlier panel decision is cast into doubt by a decision of the Supreme Court.").

Nonetheless, Summit raises a novel argument asserting that § 654(a)(2) limits an employer's duty to provide a safe workplace for only his employees. Section 654(a)(2) uses the term "occupational safety and health standards," which is defined as "a standard which requires conditions . . . reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). Summit claims that employment must mean the common law master-servant relationship. *See Darden*, 503 U.S. at 322-25; 29 U.S.C. § 652(5), (6). Therefore, according to Summit, the duty expressed in § 654(a)(2) cannot extend beyond the common law master-servant relationship. *See IBP*, 144 F.3d at 865 (raising this argument in dicta). *But see Trinity Indus.*, 504 F.3d at 402 (rejecting a similar argument).

This argument contains the same defect as Summit's argument with respect to § 1910.12(a). Specifically, to make both terms meaningful, the use of the term "places of employment" must provide something different than the term "employment." We agree that the term "places of employment" limits the employer's duty to worksites where he has employees. However, it is not limited to only the "employment" of his

employees because that interpretation would render the phrase "places of employment" redundant of "employment" and, therefore, superfluous. *See Nat'l Ass'n of Home Builders*, 127 S. Ct. at 2536; *Jewett*, 455 U.S. at 315-16; *Dryden*, 661 F.2d at 1189.

Alternatively, Summit contends that the controlling employer citation policy violates 29 U.S.C. § 653(b)(4) because it would increase the employer's liability at common law. The statute provides that "[n]othing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4). The federal courts have held that this provision does not create a private cause of action and prevents federal preemption of state tort law and worker's compensation schemes. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96 (1992) (holding that § 653(b)(4) prevents federal preemption of state tort law and worker's compensation schemes); *Lindsey v. Caterpillar, Inc.*, 480 F.3d 202, 206 (3d Cir. 2007) (same); *Am. Fed'n of Gov't Employees, AFL-CIO v. Rumsfeld*, 321 F.3d 139, 143-44 (D.C. Cir. 2003) (holding that § 653(b)(4) does not create a private cause of action); *Crane v. Conoco, Inc.*, 41 F.3d 547, 553 (9th Cir. 1994) (same); *Ries v. Nat'l R.R. Passenger Corp.*, 960 F.2d 1156, 1164-65 (3d Cir. 1992) (holding that § 653(b)(4) prohibits private causes of action including the use of a violation of an OSHA regulation to establish negligence per se). Because the controlling employer citation policy neither creates a private cause of action nor preempts state law, the policy does not violate § 653(b)(4) by increasing an employer's liability at common law.

Finally, Summit and the amici argue that the controlling employer citation policy is an ill-conceived policy that is counterproductive to the goals of the OSH Act. It is uncertain what potential benefits are gained in citing both a subcontractor and a general contractor for a single OSHA violation when the general contractor had

informed the subcontractor of the violation on prior occasions. Although a general contractor plays a role in setting safety standards at worksites, OSHA is an intricate and function-specific regulatory regime such that each employer on a worksite may be uniquely situated to know of the very specific regulatory requirements affecting its particular trade. Therefore, the controlling employer citation policy places an enormous responsibility on a general contractor to monitor all employees and all aspects of a worksite. However, these policy concerns should be addressed to Congress or to the Secretary and not to the courts. *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. ---, 128 S. Ct. 2326, 2339 (2008) ("[I]t is not for us to substitute our view of . . . policy for the legislation which has been passed by Congress.") (quotation omitted); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. ---, 127 S. Ct. 2411, 2420 (2007) ("[It] is a policy debate that belongs in the halls of Congress, not in the hearing room of this Court.").

## III.  CONCLUSION

Because we conclude that OSHRC's holding was contrary to law, we grant the Secretary's petition, vacate OSHRC's order and remand for further proceedings consistent with this opinion.[7]

 BEAM, Circuit Judge, dissenting.

I concur in the panel majority's (the court's) analysis that 29 U.S.C. § 654(a)(2) incorporates the requirements of 29 C.F.R. § 1910.12(a) within the governance imposed by the Occupational Safety and Health Act of 1970 (OSH Act).[8]  I also

---

[7]We also deny the amici's pending motion for leave to file a rebuttal brief to respond to the Secretary's reply brief.

[8]In clear dicta, the Occupational Safety and Health Review Commission refers to a general contractor's duties under § 654(a)(2) in Secretary of Labor v. Anning-Johnson Co., 4 BNA OSHC 1193, 1975-1976 CCH OSHD ¶ 20,690 (OSHRC May

concur in the court's fundamental grammatic interpretation of § 1910.12(a).[9]  I disagree, however, with the court's conclusion that the regulation, as the court construes it, is sufficiently ambiguous to require this court to defer to the Secretary of Labor's decision to overrule the carefully reasoned decision of the Occupational Safety and Health Review Commission (Commission) vacating Summit's Occupational Safety and Health Administration (OSHA) "controlling employer" citation.  Accordingly, I dissent.

With regard to the last sentence of § 1910.12(a), which reads "[e]ach employer shall protect the employment and places of employment of each of his employees engaged in construction work by complying with the appropriate standards prescribed in this paragraph," the court says:

> The subject of this sentence is "each employer," the verb is "shall protect," and the objects are "employment" and "places of employment." The rest of the sentence contains prepositional phrases; a preposition serves to "link[] an object (a noun or noun equivalent) to another word

---

12, 1976), never mentioning regulation § 1910.12(a).  This dicta from Anning-Johnson was discussed in Marshall v. Knutson Construction Co., 566 F.2d 596, 599 (8th Cir. 1977) which also does not address the regulatory issue before the court in this case.  Thus, Knutson is not binding precedent in this circuit.  See United States v. Norris, 486 F.3d 1045, 1054 (8th Cir. 2007), cert. denied, 128 S. Ct. 881 (2008).

[9]The regulation in its entirety provides:

> The standards prescribed in part 1926 of this chapter are adopted as occupational safety and health standards under section 6 of the Act and shall apply, according to the provisions thereof, to every employment and place of employment of every employee engaged in construction work.  Each employer shall protect the employment and places of employment of each of his employees engaged in construction work by complying with the appropriate standards prescribed in this paragraph.

29 C.F.R. § 1910.12(a).

in the sentence to show the relationship between them." <u>Chicago Manual of Style</u>, 187 § 5.162 (15th ed. 2003). In this case, the preposition "of" serves to link the objects, "employment" and "places of employment," to "each of his employees." Hence, grammatically reconstructed, the language of the regulation requires: (1) that an employer shall protect the employment of each of his employees ("part (1)") and (2) that an employer shall protect the places of employment of each of his employees ("part (2)").

<u>Ante</u> at 13 (alteration in original). I fully agree with this analysis as far as it goes. The court neglects, however, to note that the prepositional phrase "of each of his employees" is further limited by the words "engaged in construction work."

The court then correctly states,

the prepositional phrase "of each of his employees" serves as an adjective that narrows the meaning of "employment" and "places of employment." [<u>Chicago Manual of Style</u>,] 188 § 5.166 ("A prepositional phrase can be used as a noun, . . . an adverb, . . . or an adjective . . . ."); <u>id.</u> at 165 § 5.66 (discussing limiting adjectives). Because the term "of each of his employees" limits the term "employment," part (1) provides that an employer shall protect only the employment of his employees. Stated differently, part (1) provides that an employer shall protect only his employees. However, this is not the end of the analysis. In part (2), the term "of each of his employees" limits the term "places of employment" such that the employer shall protect the places of employment where the employer actually has employees. <u>See</u> <u>Reich v. Simpson, Gumpertz & Heger, Inc.</u>, 3 F.3d 1, 4-5 (1st Cir. 1993) (holding that the plain language of § 1910.12(a) establishes a duty of employers to protect only those construction sites where they have employees).

<u>Ante</u> at 13-14 (footnote omitted).

The court then advances a puzzling and unsupported extension of regulatory intent gleaned from these words. Without further grammatic analysis or support from other language-based inferences, the court posits that

[u]nlike part (1), part (2) of the regulation does not limit the employer's duty to protect only the employer's own employees. Therefore, the plain language of part (2) does not *preclude* an employer's duty to protect the place of employment, including others who work at the place of employment, so long as the employer also has employees at that place of employment.

Ante at 14 (emphasis added) (citation omitted). This statement is epiphytic–it draws no nourishment from the words of § 1910.12(a). The issue here is, of course, not what duty an employer may decide to impose upon himself but rather what an employer is *required* to do to avoid an OSHA sanction. Part (2) unambiguously requires Summit to protect the places of employment of Summit's employees *engaged in construction work* for Summit. Nothing more, nothing less.[10] Indeed, I find no words that support the idea that this sort of bureaucratically created ambiguity is the stuff of "deference" that should be accorded the Secretary in disputes she has with the Commission.

The court attempts to buttress the analysis with equally unsupported interpretive exercises. The court says, for instance, "[f]irst, Summit's interpretation [that it can be cited only for violations by its own employees] is contrary to the grammatical construction of the sentence because it requires the term 'each of his employees' to be the object of the sentence, rather than a prepositional phrase that modifies the actual objects of the sentence." Ante at 14. This is incorrect; Summit's interpretation clearly and correctly retains "of each of his employees" as an adjectival limitation on one or the other of the sentence's objects–"employment" or "places of employment." The

_____

[10]Although it is probably of no moment here, the court does not specify whether those employer's employees at the place of employment the court talks about must be doing "construction work" or must be present at the time an alleged violation by another employer's employees occurs, or whether these exotic occurrences need to happen during the construction work, etc. Neither does the court attempt to define "construction work" in the analysis. For instance, were Summit's superintendent and assistant superintendents engaged in "construction work" or merely in coordination and supervision of "construction work?"

court then states, "[s]econd, Summit's interpretation would make the term 'places of employment' redundant of the term 'employment' and, therefore, superfluous." Ante at 14-15. This analysis is likewise incorrect. As properly construed there is no redundancy at all between the terms "employment" and "places of employment." "Employment" refers to an individual's personal involvement with his or her daily work. "Places of employment" refers to geographic locations at and around the construction site. But, the court argues, "[u]nder Summit's interpretation, part (2) provides nothing different from or in addition to part (1); instead, it makes the term 'places of employment' a subset of the term 'employment.'" Ante at 15. The court also states,

> an employee could be exposed to a dangerous condition during the course of employment but away from the work site. However, the opposite is not true. Summit cannot provide and we cannot envision a situation where the protection of a "place of employment" will not be directly related to or encompassed by the protection of "employment."

Ante at 15. This is also incorrect, Summit can provide easily envisioned situations that refute the court's contention.

First, the words "engaged in construction work" will make it extremely unlikely that "employment away from the work site" will be in any way governed by § 1910.12(a). And even if it is, protection of such work would not displace "places of employment" regulations.

The OSH Act provides a complicated, interrelated and complex set of rules that apply to sundry work situations. Individual mastery of the OSH Act's myriad upon myriad of details is very likely impossible. The OSH Act imposes safety regulations involving the individual worker that require, for instance, protective clothing, respirators and safety equipment of every kind. These regulations protect a particular worker's physical being and may or may not do so in conjunction with particular

places at the job site–that is, operations at discrete geographic locations on the premises.

This particular dispute is illustrative of my point. The court notes that a subcontractor's employees were working ten feet or more above ground on scaffolding without the guardrails required by OSHA rules. The guardrail requirement is a rule directed toward the place of employment–i.e., working upon scaffolds. If the employees were spray-painting interior walls or blowing loose insulation into building spaces, OSHA rules almost certainly would require face masks, and probably, respiration protection equipment, although I concede that I have not specifically researched the applicable rules. This type of personal, individual equipment would be "protection of employment."

Another hypothetical situation comes to mind. Assume a coal-fired furnace is being installed during construction of a new power plant, and the furnace's burners and interior portions need to be fired up, tested, inspected and adjusted by specially trained personnel. Other employees may also be working on the furnace construction but not inside the burner area. Further assume that the OSH Act requires that these specialized workers must wear protective gear while doing their work but other employees nearby need not do so. The OSH Act regulations usually require related safety steps with regard to the furnace itself–i.e., natural gas shut-off, entry lock-out and automatic fire suppression–to prevent untoward events which may endanger all of the employer's workers near the "place of employment,"–i.e., at the location of the new furnace. This combination of regulations would, of course, protect the specially trained personnel and the other construction employees in the vicinity of the furnace construction. In such a situation, the regulation clearly, unambiguously, separately and without redundancy, governs an employer's employment of each specialized employee (the person regulations) and the place of employment (the place regulations) for the benefit of both groups of the employer's employees. Thus, at the bottom line, the Secretary is simply wrong in her ambiguity argument and the Commission

-27-

majority is correct that the regulation does not support "controlling" person citations such as those issued in this case.

Finally, the court discounts Summit's argument that the Secretary's interpretation is "counterproductive to the goals of the OSH Act." Ante at 21. At the same time, the court concedes that "[i]t is uncertain what potential benefits are gained in citing both a subcontractor and a general contractor for [as in this case] a single OSHA violation," ante at 21, especially when, also as here, Summit had informed the subcontractor of violations on prior occasions. The court further concedes that OSHA is an intricate and function-specific regulatory scheme such that each employer on a work site may be uniquely situated to know the very specific regulatory requirements affecting a particular trade. What the court fails to note, and which is equally true, is that it is impossible under the OSH Act for even the most sophisticated general contractor to recognize violations by specialized subcontractors, many of whom are larger employers than the general or prime contractor. And, in the case of the industry represented by amicus National Association of Home Builders (NAHB), a substantial percentage of residences are constructed in the United States by small businesses which operate almost completely through employment of subcontractors.[11] In other words, the supposed general homebuilding contractor often has no "employees" at all, (under any generally recognized definition of the term), "engaged in construction work" at "places of employment" contemplated by the regulation. To impose the Secretary's rule on these employers is, in my view, absurd as a matter of rational policy.

---

[11]U.S. Census data from 2002 indicate that about 68.1 percent of residential builder establishments had four or fewer employees on payroll; and about 20.0 percent had five to nine employees on payroll. (Resp. by Amicus Curiae to Information Req. at 4, ¶ 8, August 11, 2008). Currently, NAHB builder-members have a median of four paid employees. (Supplemental Resp. by Amicus Curiae to Information Req. at 3, ¶ 9, December 10, 2008).

The court dismisses these policy quirks as concerns that "should be addressed to Congress or to the Secretary and not to the courts." <u>Ante</u> at 22. Such an argument misses the main point of this appeal. The regulation authorized by Congress, § 1910.12(a), through enactment by OSHA, when correctly read, does not authorize, indeed it rejects, the Secretary's policy. And if there is any ambiguity in the rule, which ambiguity I reject, these policy problems, especially those that show the Secretary's approach creates problems that are impossible to solve, should serve as an interpretative guide to a logical reading of § 1910.12(a). It is not Congress's policy pronouncements that need to be revisited, it is the Secretary's, and now this court's misinterpretation of them.

I dissent.

_____