*53 Justice Thomas
delivered the opinion of the Court.
In these cases, we consider whether an incumbent provider of local telephone service must make certain transmission facilities available to competitors at cost-based rates. The Federal Communications Commission (FCC or Commission), as amicus curiae[1] contends that its regulations require the incumbent provider to do so if the facilities are to be used for interconnection: to link the incumbent provider’s telephone network with the competitor’s network for the mutual exchange of traffic. We defer to the Commission’s views and reverse the judgment below.
I
The Telecommunications Act of 1996 (1996 Act), 110 Stat. 56, imposed a number of duties on incumbent providers of local telephone service in order to facilitate market entry by competitors. AT&T Corp. v. Iowa Utilities Bd., 525 U. S. 366, 371 (1999). The incumbent local exchange carriers (LECs) owned the local exchange networks: the physical equipment necessary to receive, properly route, and deliver phone calls among customers. Verizon Communications Inc. v. FCC, 535 U. S. 467, 490 (2002). Before the 1996 Act, a new, competitive LEC could not compete with an incumbent *54 carrier without basically replicating the incumbent’s entire existing network. Ibid.
The 1996 Act addressed that barrier to market entry by requiring incumbent LECs to share their networks with competitive LECs in several ways, two of which are relevant here. First, 47 U. S. C. § 251(c)(3) requires incumbent LECs to lease “on an unbundled basis” — i. e., a la carte — network elements specified by the Commission. This makes it easier for a competitor to create its own network without having to build every element from scratch. In identifying which network elements must be available for unbundled lease under § 251(c)(3), the Commission is required to consider whether access is “necessary” and whether failing to provide access would “impair” a competitor’s provision of service. § 251(d)(2). Second, § 251(c)(2) mandates that incumbent LECs “provide ... interconnection” between their networks and competitive LECs’ facilities. This ensures that customers on a competitor’s network can call customers on the incumbent’s network, and vice versa. The interconnection duty is independent of the unbundling rules and not subject to impairment analysis. It is undisputed that both unbundled network elements and interconnection must be provided at cost-based rates. See § 252(d)(1); Brief for Petitioner in No. 10-313, p. 28; Brief for Petitioners in No. 10-329, p. 7; Brief for Respondent 4.
These cases concern incumbent LECs’ obligation to share existing “entrance facilities” with competitive LECs. Entrance facilities are the transmission facilities (typically wires or cables) that connect competitive LECs’ networks with incumbent LECs’ networks. The FCC recently adopted a regulation specifying that entrance facilities are not among the network elements that § 251(c)(3) requires incumbents to lease to competitors on an unbundled basis at cost-based rates. See 47 CFR §51.319(e)(2)(i) (2005). The Commission noted, however, that it “d[id] not alter the right of competitive LECs to obtain interconnection facilities pur *55 suant to section 251(e)(2).” In re Unbundled Access to Network Elements, 20 FCC Red. 2533, 2611, ¶ 140 (2005) (Triennial Review Remand Order).
The specific issue here is whether respondent, Michigan Bell Telephone Company, d/b/a AT&T Michigan (AT&T), must lease existing entrance facilities to competitive LECs at cost-based rates. The FCC interprets its regulations to require AT&T to do so for the purpose of interconnection. We begin by reviewing the Commission’s recent actions regarding entrance facilities and then explain the particular dispute that is before us today.
A
In 2003, the FCC decided, contrary to its previous orders, that incumbent LECs were not obligated to provide cost-based unbundled access to entrance facilities under § 251(c)(3). In re Review of Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers, 18 FCC Red. 16978, 17202-17205, ¶¶ 365-367 (2003) (Triennial Review Order). Explaining that its previous approach had been “misguided” and “overly broad,” id., ¶¶ 366, 365, the Commission concluded that entrance facilities were not subject to the unbundling requirement because they are not network elements at all. See id., ¶ 366 (entrance facilities “exist outside the incumbent LEC’s local network”). The Commission therefore did not conduct an impairment analysis.
The FCC emphasized, however, the limits of this ruling. Entrance facilities are used for two purposes: interconnection and baekhauling.[2] It expressly “d[id] not alter” an in *56 cumbent LEC’s obligation under § 251(c)(2) to provide “facilities in order to ‘interconnect with the incumbent LEC’s network.’” Id., ¶366 (brackets omitted). Thus, although the Commission specified that § 251(c)(3) did not require any unbundled leasing of entrance facilities, it determined in practical effect only that “incumbent LECs [were not obligated] to unbundle [entrance facilities] for the purpose of baekhauling traffic.” Id., ¶ 365.
On direct review, the D. C. Circuit questioned the Commission’s determination that entrance facilities are not network elements under § 251(c)(3), but found the agency rulemaking record insufficient and remanded to the Commission for further consideration. See United States Telecom Assn. v. FCC, 359 F. 3d 554, 586, cert, denied, 543 U. S. 925 (2004). The court noted that if entrance facilities were in fact “ ‘network elements,’ ” then “an analysis of impairment would presumably follow.” 359 F. 3d, at 586.
In 2005, the Commission responded. See Triennial Review Remand Order ¶ ¶ 136-141. The Commission retreated from its view that entrance facilities are not network elements but adhered to its previous position that cost-based unbundled access to them need not be provided under § 251(c)(3). Id., ¶¶ 137-138. Treating entrance facilities as network elements, the Commission concluded that competitive LECs are not impaired without access to them. Ibid. The Commission again emphasized that it “d[id] not alter the right of competitive LECs to obtain interconnection facilities pursuant to section 251(c)(2).” Id., ¶ 140.
B
In the wake of the Triennial Review Remand Order, AT&T notified competitive LECs that it would no longer provide entrance facilities at cost-based rates for either back-hauling or interconnection, but would instead charge higher *57 rates. Competitive LECs complained to the Michigan Public Service Commission (PSC) that AT&T was unlawfully abrogating their right to cost-based interconnection under § 251(c)(2). The Michigan PSC agreed with the competitive LECs and ordered AT&T to continue providing entrance facilities for interconnection at cost-based rates.
AT&T challenged the Michigan PSC’s ruling in the District Court, which, relying on the Triennial Review Remand Order, ruled in AT&T’s favor. The Michigan PSC and several competitive LECs, including petitioner Talk America, Inc., appealed.
The Court of Appeals for the Sixth Circuit affirmed over a dissent. Michigan Bell Telephone Co. v. Covad Communications Co., 597 F. 3d 370 (2010). At the court’s invitation, the FCC filed a brief as amicus curiae, arguing that the Triennial Review Remand Order did not change incumbent LECs’ interconnection obligations, including the obligation to lease entrance facilities for interconnection. The Sixth Circuit declined to defer to the FCC’s views, 597 F. 3d, at 375, n. 6, and also expressly disagreed with the Seventh and Eighth Circuits, id., at 384-386 (discussing Illinois Bell Tel. Co. v. Box, 526 F. 3d 1069 (2008), and Southwestern Bell Tel., L. P. v. Missouri Pub. Serv. Comm’n, 530 F. 3d 676 (2008)).[3]
We granted certiorari, 562 U. S. 1104 (2010), and now reverse.
II
Petitioners contend that AT&T must lease its existing entrance facilities for interconnection at cost-based rates. We agree.
A
No statute or regulation squarely addresses whether an incumbent LEC must provide access to entrance facilities at cost-based rates as part of its interconnection duty *58 under § 251(e)(2). According to the statute, each incumbent LEC has:
“The duty to provide, for the facilities and equipment of any requesting telecommunications carrier, interconnection with the local exchange carrier’s network—
“(A) for the transmission and routing of telephone exchange service and exchange access;
“(B) at any technically feasible point within the carrier’s network;
“(C) that is at least equal in quality to that provided by the local exchange carrier to itself or to any subsidiary, affiliate, or any other party to which the carrier provides interconnection; and
“(D) on rates, terms, and conditions that are just, reasonable, and nondiscriminatory, in accordance with the terms and conditions of the agreement and the requirements of this section and section 252 of this title.”
Nothing in that language expressly addresses entrance facilities. Nor does any regulation do so. See Brief for United States as Amicus Curiae 22, n. 6.
AT&T contends that the statute makes clear that an incumbent LEC need not provide access to any facilities— much less entrance facilities — to provide interconnection. The company points out that § 251(c)(2) does not mention incumbent LECs’ facilities, but rather mandates only that incumbent LECs provide interconnection “for the facilities and equipment of any [competing] carrier.” In contrast, AT&T notes, § 251(e)(3) requires that incumbent LECs provide unbundled “access to [their] network elements.”
We do not find the statute so clear. Although § 251(c)(2) does not expressly require that incumbent LECs lease facilities to provide interconnection, it also does not expressly excuse them from doing so. The statute says nothing about what an incumbent LEC must do to “provide . . . interconnection.” § 251(c)(2). “[T]he facilities and equipment of *59 any [competing] carrier” identifies the equipment that an incumbent LEC must allow to interconnect, but it does not specify what the incumbent LEC must do to make the interconnection possible. Ibid.
B
In the absence of any unambiguous statute or regulation, we turn to the FCC’s interpretation of its regulations in its amicus brief. See, e. g., Chase Bank USA, N. A. v. McCoy, 562 U. S. 195, 207 (2011). As we reaffirmed earlier this Term, we defer to an agency's interpretation of its regulations, even in a legal brief, unless the interpretation is “ ‘plainly erroneous or inconsistent with the regulation[]’ ” or there is any other “ ‘reason to suspect that the interpretation does not reflect the agency’s fair and considered judgment on the matter in question.’” Id., at 208, 209 (quoting Auer v. Robbins, 519 U. S. 452, 461, 462 (1997)).
The Commission contends that its regulations require AT&T to provide access at cost-based rates to its existing entrance facilities for the purpose of interconnection. The Commission’s interpretation proceeds in three steps. First, an incumbent LEC must lease “technically feasible” facilities for interconnection. Second, entrance facilities are among the facilities that an incumbent must make available for interconnection, if technically feasible. Third, it is technically feasible to provide access to the particular entrance facilities at issue in these cases.
1
The Commission first contends that an incumbent LEC must lease, at cost-based rates, any requested facilities for obtaining interconnection with the incumbent LEC’s network, unless it is technically infeasible to do so. Section 251(c)(2) mandates that an incumbent LEC provide interconnection, at cost-based rates, “at any technically feasible point within the carrier’s network.” The FCC has long construed § 251(c)(2) to require incumbent LECs to provide, at cost- *60 based rates, “any technically feasible method of obtaining interconnection ... at a particular point.” 47 CFR § 51.321(a) (2010).
The requirement in § 51.321(a) to provide a “method of obtaining interconnection,” the Commission argues, encompasses a duty to lease an existing facility to a competing LEC. When the Commission originally promulgated § 51.321(a), it explained that incumbent LECs would be required to “adapt their facilities to interconnection” and to “accept the novel use of, and modification to, [their] network facilities.” In re Implementation of Local Competition Provisions in the Telecommunications Act of 1996, 11 FCC Red. 15499, 15605, ¶ 202 (1996) (Local Competition Order). Since then, as AT&T and its amici concede, incumbent LECs have commonly leased certain facilities at cost-based prices to accommodate interconnection. See Brief for Respondent 28-29; Brief for United States Telecom Association et al. as Amici Curiae 33-35.
As additional support for its assertion that incumbent LECs are obligated to lease facilities, the FCC highlights the examples in § 51.321(b) of “[t]echnically feasible methods of obtaining interconnection,” which include “[m]eet point interconnection arrangements.” In a meet-point arrangement, an incumbent LEC “accommodat[es]” interconnection by building a transmission facility from its network to a designated point, where it connects with the competitor's corresponding transmission facility. Local Competition Order ¶ 553. Compared to that requirement, the Commission argues, the obligation to lease existing facilities for interconnection is quite modest.
2
Next, the Commission contends that existing entrance facilities are among the facilities that an incumbent LEC must lease for interconnection. According to the FCC, the Triennial Review Remand Order adopted a regulatory definition that reestablished that entrance facilities are part of *61 an incumbent LEC’s network. See ¶ 137; see also 47 CFR § 51.319(e). The end of every entrance facility is therefore a “point within [an incumbent] carrier’s network” at which a competing LEC could request interconnection, 47 U. S. C. § 251(c)(2), and each entrance, facility potentially provides a “technically feasible method of obtaining interconnection,” 47 CFR § 51.321(a).
3
Finally, the FCC contends that providing access to the entrance facilities here for interconnection purposes is technically feasible. Under the Commission’s regulations, an incumbent LEC bears the burden of showing that a requested method or point of interconnection is technically infeasible. See 47 CFR §§ 51.305(e), 51.321(d); see also §§ 51.305(d), 51.321(e) (previously successful interconnection is “substantial evidence” of technical feasibility). AT&T does not dispute technical feasibility here.[4]
C
The FCC’s interpretation is not “plainly erroneous or inconsistent with the regulation[s].” Auer, supra, at 461 (internal quotation marks omitted). First, we disagree with AT&T’s argument that entrance facilities are not a part of *62 incumbent LECs’ networks. Indeed, the Commission’s view on this question is more than reasonable; it is certainly not plainly erroneous. The Triennial Review Remand Order responded to the D. C. Circuit’s decision questioning the Commission’s earlier finding that entrance facilities are not network elements. It revised the definition of dedicated transport — a type of network element — to include entrance facilities. Triennial Review Remand Order ¶¶ 136-137; see 47 CFR § 51.319(e)(1) (defining dedicated transport to include “incumbent LEC transmission facilities . . . between wire centers or switches owned by incumbent LECs and switches owned by [competing] carriers”). Given that revised definition, it is perfectly sensible to conclude that entrance facilities are a part of incumbent LECs’ networks.
Second, we are not persuaded by AT&T’s argument that the Commission’s views conflict with the definition of interconnection in §51.5. That regulation provides: “Interconnection is the linking of two networks for the mutual exchange of traffic. This term does not include the transport and termination of traffic.” AT&T focuses on the definition’s exclusion of “transport and termination of traffic.” An entrance facility is a transport facility, AT&T argues, and it makes no sense to require an incumbent LEC to furnish a transport facility for interconnection when the definition of interconnection expressly excludes transport.
We think AT&T reads too much into the exclusion of “transport.” The regulation cannot possibly mean that no transport can occur across an interconnection facility, as that would directly conflict with the statutory language. See § 251(c)(2) (requiring “interconnection ... for the transmission and routing of [local] telephone exchange service”). The very reason for interconnection is the “mutual exchange of traffic.” 47 CFR § 51.5; see also Competitive Telecommunications Assn. v. FCC, 117 F. 3d 1068, 1071-1072 (CA8 1997) (“[T]he transmission and routing of telephone exchange service” is “what the interconnection, the physical link, would be used for” (internal quotation marks omitted)).
*63 The better reading of the regulation is that it merely reflects that the “transport and termination of traffic” is subject to different regulatory treatment than interconnection. Compensation for transport and termination — that is, for delivering local telephone calls placed by another carrier’s customer — is governed by separate statutory provisions and regulations. See 47 U. S. C. §§ 251(b)(5), 252(d)(2); 47 CFR § 51.701. The Commission explains that a competitive LEC typically pays one fee for interconnection — “just for having the link” — and then an additional fee for the transport and termination of telephone calls. Tr. of Oral Arg. 28; see also Brief for United States as Amicus Curiae 3, n. 1. Entrance facilities, at least when used for the mutual exchange of traffic, seem to us to fall comfortably within the definition of interconnection. See 597 F. 3d, at 388 (Sutton, J., dissenting) (noting that entrance facilities are “designed for the very purpose of linking two carriers’ networks” (internal quotation marks omitted)).
In sum, the Commission’s interpretation of its regulations is neither plainly erroneous nor inconsistent with the regulatory text. Contrary to AT&T’s assertion, there is no danger that deferring to the Commission would effectively “permit the agency, under the guise of interpreting a regulation, to create defacto a new regulation.”[5] Christensen v. Harris County, 529 U. S. 576, 588 (2000).
D
Nor is there any other “reason to suspect that the interpretation does not reflect the agency’s fair and considered *64 judgment on the matter in question.” Auer, 519 U. S., at 462. We are not faced with a post-hoc rationalization by Commission counsel of agency action that is under judicial review. See ibid.; see also Burlington Truck Lines, Inc. v. United States, 371 U. S. 156, 168-169 (1962) (“The courts may not accept appellate counsel’s post hoc rationalizations for agency action; [SEC v.] Chenery [Corp., 332 U. S. 194 (1947),] requires that an agency’s discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself”). And although the FCC concedes that it is advancing a novel interpretation of its longstanding interconnection regulations, novelty alone is not a reason to refuse deference. The Commission explains that the issue in these eases did not arise until recently — when it initially eliminated unbundled access to entrance facilities in the Triennial Review Order. Until then, the Commission says, a competitive LEC typically would elect to lease a cost-priced entrance facility under § 251(c)(3) since entrance facilities leased under § 251(c)(3) could be used for any purpose — i. e., both interconnection and backhauling — but entrance facilities leased under § 251(c)(2) can be used only for interconnection. We see no reason to doubt this explanation.
AT&T suggests that the Commission is attempting to require under § 251(c)(2) what courts have prevented it from requiring under § 251(c)(3) and what the Commission itself said was not required in the Triennial Review Remand Order. Tr. of Oral Arg. 50 (“[T]his is a rear guard effort to preserve [cost-based] pricing for things that the [Commission has said should no longer be available ... at [such] pricing”). We do not think that AT&T is correct.
1
To begin with, AT&T’s accusation does not square with the regulatory history. The Commission was not compelled to eliminate the obligation to lease unbundled entrance facilities at cost-based rates.
*65 It is true that, prior to the Triennial Review orders, the Commission twice unsuccessfully attempted to impose sweeping unbundling requirements on incumbent LECs. See Local Competition Order ¶ 278; In re Implementation of Local Competition Provisions of the Telecommunications Act of 1996, 15 FCC Red. 3696, 8771-3904, ¶¶ 162-464 (1999); see also 47 CFR § 51.319 (1997); § 51.319 (2000). Each time, the Commission’s efforts were rejected for taking an unreasonably broad view of “impair[ment]” under § 251(d)(2). See Iowa Utilities Bd., 525 U. S., at 392; United States Telecom Assn. v. FCC, 290 F. 3d 415, 421-428 (CADC 2002), cert, denied, 538 U. S. 940 (2003). In the Triennial Review Order, the Commission once again reinterpreted the “impair” standard and revised the list of network elements that incumbents must provide unbundled to competitors.
The Commission’s initial decision to eliminate the obligation to unbundle entrance facilities, however, was not a result of the narrower view of impairment mandated by this Court and the D. C. Circuit. Instead, the Commission determined that entrance facilities need not be provided on an unbundled basis under § 251(c)(3) on the novel ground that they are not network elements at all — something no court had ever suggested.
Moreover, since its initial decision to eliminate the un-bundling obligation for entrance facilities, the Commission has been committed to that position. When the D. C. Circuit questioned the Commission’s finding that entrance facilities are not network elements, the Commission responded by observing that the court “did not reject our conclusion that incumbent LECs need not unbundle entrance facilities, only the analysis through which we reached that conclusion.” Triennial Review Remand Order ¶ 137. The Commission then found another way to support that same conclusion.
2
More importantly, AT&T’s characterization of what the Commission has done, and is doing, is inaccurate. The Tri *66 ennial Review orders eliminated incumbent LECs’ obligation under § 251(c)(3) to provide unbundled access to entrance facilities. But the FCC emphasized in both orders that it “d[id] not alter” the obligation on incumbent LECs under § 251(c)(2) to provide facilities for interconnection purposes. Triennial Review Order ¶366; Triennial Review Remand Order ¶ 140. Because entrance facilities are used for backhauling and interconnection purposes, the FCC effectively eliminated only unbundled access to entrance facilities for backhauling purposes — a nuance it expressly noted in the first Triennial Review order. Triennial Review Order ¶ 365. That distinction is neither unusual nor ambiguous.[6] In these cases, the Commission is simply explaining the interconnection obligation that it left undisturbed in the Triennial Review orders. We see no conflict between the Triennial Review orders and the Commission’s views expressed here.[7]
We are not concerned that the Triennial Review Remand Order did not expressly distinguish between backhauling and interconnection, though AT&T makes much of that fact. AT&T argues that the Commission’s holding in the Triennial Review Remand Order is broader than that in the Triennial Review Order. In AT&T’s view, the Commission *67 concluded in the Triennial Review Remand Order that competitors are not impaired if they lack cost-based access to entrance facilities for backhauling or interconnection.
There are two flaws with AT&T’s reasoning. First, as we have discussed, the Triennial Review Remand Order reinstated the ultimate conclusion of the Triennial Review Order and changed only “the analysis through which [it] reached that conclusion.” Triennial Review Remand Order ¶ 137. Second, unlike §251(c)(3)’s unbundling obligation, § 251(c)(2)’s interconnection obligation does not require the Commission to consider impairment. As the dissent below observed, it would be surprising indeed if the FCC had taken the novel step of incorporating impairment into interconnection without comment. 597 F. 3d, at 389 (opinion of Sutton, J.).
* * *
The FCC as amicus curiae has advanced a reasonable interpretation of its regulations, and we defer to its views. The judgment of the United States Court of Appeals for the Sixth Circuit is reversed.

It is so ordered.

Justice Kagan took no part in the consideration or decision of these cases.

 The Solicitor General, joined by counsel for the FCC, represents that the amicus brief for the United States filed in this Court reflects the Commission’s considered interpretation of its own rules and orders. Brief for United States 31. We thus refer to the Government’s arguments in these cases as those of the agency. See, e. g., Chase Bank USA, N. A. v. McCoy, 562 U. S. 195, 203 (2011).

 Although the parties and their amici disagree over the precise definition of baekhauling, they all appear to agree that baekhauling is important to competitive LECs and occurs when a competitive LEC uses an entrance facility to transport traffic from a leased portion of an incumbent network to the competitor’s own facilities. Baekhauling does not involve the exchange of traffic between incumbent and competitive networks. See, e. g., Brief for Petitioners in No. 10-329, p. 25; Brief for United States Telecom Association et al. as Amici Curiae 82. It thus differs from interconnec *56 tion — “the linking of two networks for the mutual exchange of traffic.” 47 CFR §51.5 (2010).

 The Ninth Circuit has since joined the Seventh and Eighth Circuits. Pacific Bell Tel. Co. v. California Pub. Util. Comm’n, 621F. 3d 836 (2010).

 These eases concern only existing entrance facilities, and the Commission expressly declines to address whether it reads its regulations to require incumbent LECs to build new entrance facilities for interconnection. Brief for United States as Amicus Curiae 25, n. 7. The Commission suggests here, as it has before, that additional considerations of cost or reasonableness might be appropriate if a competitive LEC were to request that an incumbent LEC build new entrance facilities for interconnection. Ibid, (noting that the Commission’s Wireline Competition Bureau has declined to require an incumbent LEC to bear the entire cost of building new entrance facilities); see also Local Competition Order ¶ 553 (explaining with respect to meet-point arrangements that “the parties and state commissions are in a better position than the Commission to determine the appropriate distance that would constitute the required reasonable accommodation of interconnection”). We express no view on the matter.

 There is no merit to AT&T’s assertion that the FCC is improperly amending the list of “[t]echnically feasible methods of obtaining interconnection” set forth in 47 CFR § 51.321(b). By its own terms, that list is nonexhaustive. See § 51.321(b) (“[technically feasible methods of obtaining interconnection . . . include, but are not limited to,” the listed examples); see also § 51.321(a) (“[A]n incumbent LEC shall provide . . . any technically feasible method of obtaining interconnection” (emphasis added)).

 The Commission has long recognized that a single facility can be used for different functions and that its regulatory treatment can vary depending on its use. Unbundled network elements, for example, may not be used for the exclusive provision of mobile wireless or long-distance services. 47 CFR § 51.309(b) (2010). Similarly, interconnection arrangements may be used for local telephone service but not for long-distance services. § 51.305(b).

 The parties and their amici dispute whether an incumbent LEC has any way of knowing how a competitive LEC is using an entrance facility. This technical factual dispute simply underscores the appropriateness of deferring to the FCC. So long as the Commission is acting within the scope of its delegated authority and in accordance with prescribed procedures, it has greater expertise and stands in a better position than this Court to make the technical and policy judgments necessary to administer the complex regulatory program at issue here.