# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 20, 2015          Decided April 3, 2015

No. 14-1039

FIBERTOWER SPECTRUM HOLDINGS, LLC, FIBERTOWER
CORPORATION,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

FIXED WIRELESS COMMUNICATIONS COALITION, INC.,
INTERVENOR

On Appeal of Orders of the
Federal Communications Commission

*Pratik A. Shah* argued the cause for appellant. With him on the briefs were *Tom W. Davidson*, *Douglas I. Brandon*, *Hyland Hunt*, *Z.W. Julius Chen*, *Matthew A. Scarola*, and *Joseph M. Sandri*.

*Maureen K. Flood*, Counsel, Federal Communications Commission, argued the cause for appellee. With her on the brief were *Jonathan B. Sallet*, General Counsel, *David M. Gossett*, Acting Deputy General Counsel, and *Jacob M. Lewis*, Associate General Counsel. *Richard K. Welch*, Deputy Associate General Counsel, entered an appearance.

Before: ROGERS and SRINIVASAN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*:  This appeal challenges orders of the Federal Communications Commission denying applications to renew 689 wireless spectrum licenses in the 24 gigahertz ("GHz") and 39 GHz bands for failure to meet the "substantial service" performance standard during the license term.  It succeeds only in part.  FiberTower Spectrum Holdings, LLC, and FiberTower Corporation (hereinafter "FiberTower") contend that the Commission's interpretation of the performance standard as requiring some actual construction in each license area conflicts with the Commission's statutory mandate in 47 U.S.C. § 309(j)(4)(B).  Because this argument was not presented to the Commission, *see* 47 U.S.C. § 405(a), it is not properly before the court and we do not address it.  FiberTower also contends that the Commission's interpretation of "substantial service" is inconsistent with that standard as originally promulgated by the Commission.  Review of the text of the regulations and the rulemaking record demonstrates this argument is not well founded.  FiberTower, however, further contends that the Commission erred in applying its "substantial service" interpretation to forty-two licenses because their renewal applications stated construction had occurred.  This error requires a remand, and we vacate the orders denying renewal of those forty-two licenses.  As a result, we also vacate the orders denying extension and waiver, so the Commission can rule on those requests based on an accurate understanding of the record.

## I.

The Communications Act of 1934, as amended, establishes

a system for licensing the use of radio spectrum, and vests in the Commission the exclusive authority to grant radio licenses. *See* 47 U.S.C. § 301. The licenses do not "create any right, beyond the terms, conditions, and periods of the license." *Id.* The Commission is authorized to prescribe restrictions and conditions necessary to carry out its duties, *see id.* § 303(r), and for licenses awarded by auction, *see id.* § 309(j)(1), it must adopt

> performance requirements, such as appropriate deadlines and penalties for performance failures, to ensure prompt delivery of service to rural areas, to prevent stockpiling or warehousing of spectrum by licensees or permittees, and to promote investment in and rapid deployment of new technologies and services.

*Id.* § 309(j)(4)(B).

Under Commission rules, licenses in the 24 and 39 GHz bands, at issue here, are awarded for ten years, and the licensee must demonstrate "substantial service" in the area covered by the license by the time of renewal. *See* 47 C.F.R. §§ 101.67, 101.17, 101.527; *In the Matter of Amendment of the Comm'n's Rules Regarding the 37.0-38.6 GHz and 38.6-40.0 GHz Bands*, 12 FCC Rcd. 18600, ¶ 46 (1997) ("*39 GHz Order*"). The Commission has defined "substantial service" as "service which is sound, favorable, and substantially above a level of mediocre service which just might minimally warrant renewal." 47 C.F.R. §§ 22.940(a)(1)(i), 24.203(d), 101.527(a); *see In the Matter of Amendments to Parts 1, 2, 87 and 101 of the Comm'n's Rules to License Fixed Services at 24 GHz*, 15 FCC Rcd. 16934, ¶ 38 (2000) ("*24 GHz Order*"). One way a licensee can show "substantial service" is by complying with one of several "safe harbors," which include "a showing of [construction and

operation of] four [microwave] links per million population within a service area or service to an area that has very limited access to either wireless or wireline telecommunications services." *24 GHz Order*, ¶ 38; *see 39 GHz Order*, ¶ 46.

A failure to demonstrate substantial service by the renewal deadline "will result in forfeiture of the license." 47 C.F.R. § 101.527(c); *see id.* § 101.17(b). The Commission may grant an extension of the deadline for showing substantial service if the licensee shows that its failure to provide substantial service "is due to involuntary loss of site or other causes beyond its control." *Id.* § 1.946(e)(1). The Commission may also waive the substantial service requirement entirely when "[t]he underlying purpose of the rule(s) would not be served or would be frustrated . . . [and] a grant of the requested waiver would be in the public interest," or when "application of the rule(s) would be inequitable, unduly burdensome or contrary to the public interest, or the applicant has no reasonable alternative." *Id.* § 1.925(b)(3).

FiberTower provides "wireless backhaul" — *i.e.*, the transmission of voice and data between cell towers and regional or national networks — to cellular companies and public agencies. It owns over 3,000 licenses in the 11 GHz, 18 GHz, and 23 GHz bands, and acquired through a merger in 2006 over seven hundred licenses in the 24 GHz and 39 GHz bands, *see In re Matter of ART Licensing Corp.*, 23 FCC Rcd. 14116, ¶ 4 (WTB Oct. 2, 2008) ("*2008 Bureau Order*"); *In re Matter of FiberTower Spectrum Holdings LLC*, 27 FCC Rcd. 13562, ¶ 2 (WTB Nov. 7, 2012) ("*Bureau Order*"). The 24 GHz and 39 GHz bands are used to provide backhaul service for mobile broadband networks, and FiberTower's licenses in these bands cover most of the continental United States. *See id.* Shortly after acquiring the 24 and 39 GHz licenses FiberTower obtained an extension of the 2008 substantial service deadlines for its 39

GHz licenses to June 1, 2012. The Wireless Telecommunications Bureau, *see* 47 C.F.R. §§ 0.131(a), 0.331, found that the public interest "would best be served by" extending the deadline for the 39 GHz licenses, *2008 Bureau Order*, ¶ 21, because the Bureau anticipated that mobile broadband services, which rely on wireless backhaul, would "develop robustly" in the coming years, *id.* ¶ 20. The Bureau also cautioned that it did "not believe that a finding of substantial service can be made without a demonstration of actual construction or operation in the licensed area during the license term." *Id.* ¶ 16. In October 2010, the Bureau granted the same extension to June 1, 2012 for FiberTower's 24 GHz licenses.

In May 2012, FiberTower filed for an extension or a waiver of the 2012 deadline with respect to 699 licenses. Two weeks later, FiberTower also filed substantial service showings for each license. In November 2012, the Bureau found that FiberTower had not satisfied the substantial service requirement. *See Bureau Order*, ¶ 18. Ten licenses in which the Bureau found there had been "some level of actual construction as of the deadline," *id.* ¶ 2, were not terminated, but the other 689 licenses were because FiberTower's "antecedent activities" — investing in new technology, developing its own back-office operations, acquiring equipment and property, and making its spectrum available for lease on the secondary market — could not alone "constitute substantial service." *Id.* ¶ 22 (citing *In the Matter of Amendment of Part 101 of the Comm'n's Rules to Facilitate the Use of Microwave for Wireless Backhaul and Other Uses and to Provide Additional Flexibility to Broadcast Auxiliary Service and Operational Fixed Microwave Licensees*, 27 FCC Rcd. 9735, ¶ 104 (2012) ("*Wireless Backhaul Order*"); 26 FCC Rcd. 11614, ¶ 114 (2011)). Concluding that FiberTower's failure to "build out" its licenses was a "business decision" within its control, the Bureau denied an extension.

The Bureau also concluded the public interest would not be served by waiving the substantial service requirement. *See also Bureau Order*, ¶ 39.

The Commission affirmed, upon consideration of FiberTower's Application for Review and Petition for Reconsideration. *In the Matter of FiberTower Spectrum Holdings LLC*, 28 FCC Rcd. 6822 (2013) ("*Order*"); 29 FCC Rcd. 2493 (2014) ("*Reconsideration Order*"). The Commission endorsed the Bureau's conclusion, based on prior Commission decisions, that FiberTower's antecedent activities without actual construction could not satisfy the substantial service requirement. *See Order*, ¶ 39 & n.156 (citing *Wireless Backhaul Order*, ¶ 104). Agreeing also that FiberTower's decision not to construct links was a voluntary business decision, the Commission rejected FiberTower's claims that the market for wireless backhaul was underdeveloped and that there was a lack of viable equipment, noting the "explosive growth in demand for mobile broadband services since 2008, and [a] corresponding demand for backhaul," *Order*, ¶ 19, and denied FiberTower's request for extension of the deadline, *id.*; *see also id.* ¶ 21. And concluding that the need to enforce construction requirements outweighed any delays in relicensing and the investments FiberTower had made, the Commission concluded a waiver was unwarranted. *Id.* ¶¶ 34–37. *See also Order*, ¶ 45; *Reconsideration Order*, ¶ 39. FiberTower appeals.

## II.

FiberTower' statutory challenge flounders under 47 U.S.C. § 405(a), which provides:

> The filing of a petition for reconsideration shall not be a condition precedent to judicial review . . . except where the party seeking such review . . . relies on

questions of fact or law upon which the Commission, or designated authority within the Commission, has been afforded no opportunity to pass.

FiberTower contends that the Commission's construction requirement as a part of demonstrating "substantial service" is "at odds with" the statutory goal in 47 U.S.C. § 309(j)(4)(B) of promoting "investment in" new technologies. Appellant's Br. 28. But FiberTower failed to make this argument in its Application for Review to the Commission, never citing § 309(j)(4)(B) and instead arguing that the construction requirement was an "ill-conceived policy" with "adverse consequences contrary to the public interest." Application for Review, *In the Matter of FiberTower Corp.*, at 20, File No. 5207557, Dec. 7, 2012. Neither did FiberTower present this statutory argument in its Petition for Reconsideration.

FiberTower's suggestions that it nonetheless afforded the Commission an "opportunity to pass" on its statutory argument are unpersuasive. First, FiberTower states that "[a] core premise of FiberTower's application for review was that the Commission's policy of disregarding leasing and other activities hindered 'legitimate investment' and the 'develop[ment] [of] the licensed spectrum.'" Reply Br. 4 (quoting Application for Review, at 21–22) (alterations in original). But the Application for Review characterized that argument only as illustrating why the build-out requirement was "contrary to the public interest," Application for Review, at 20, not that the requirement was contrary to § 309(j)(4)(B). The language suggests the sort of claim that would normally give rise to judicial review only for whether the agency's action was arbitrary or capricious. Second, FiberTower refers to a "white paper" submitted as a supplement to its Application for Review that explained why its antecedent activities "were consistent with Section 309(j)'s mandate of promoting investment and deployment of new

technologies and services — underscoring that FiberTower's argument was anchored in the statute." Reply Br. 5. Again, this is not an argument that the "build out" requirement violates § 309(j)(4)(B), and "[t]he Commission need not sift pleadings and documents to identify arguments that are not stated with clarity by a petitioner." *Bartholdi Cable Co., Inc. v. FCC*, 114 F.3d 274, 279 (D.C. Cir. 1997) (internal quotation marks omitted); *see also* 47 C.F.R. § 1.115(b)(1). Third, FiberTower states that the rulemaking proceedings in which the Commission adopted the substantial service rules "were inextricably intertwined with Section 309(j)." Reply Br. 5. Even so, FiberTower failed to alert the Commission to the statutory argument that it seeks to present for the first time on appeal.

*Time Warner Entertainment Co., L.P. v. FCC*, 144 F.3d 75 (D.C. Cir. 1998), on which FiberTower relies, is inapposite. In that case, the court held that its reasoning in an earlier remand had given the Commission an "opportunity to pass" on an issue, even though the issue had not been raised in a petition for reconsideration. *Id.* at 81–82. The court observed that the logic of its prior decision meant it was unreasonable for the Commission not to respond on remand. *Id*. The court viewed the Commission's position that the issue had been conceded in a pre-remand filing to be "a disingenuous gimmick used to avoid a principled response to our remand." *Id.* at 81. Here, by contrast, no other party brought the § 309(j)(4)(B) argument to the Commission's attention. And, unlike in *Time Warner*, FiberTower has not pointed to record evidence that the Commission realized FiberTower's § 309(j)(4)(B) argument was before it. It is true that the court in *Time Warner* noted the Commission is afforded the required "opportunity to pass" on an issue "necessarily implicated by the argument made to the Commission," giving as an example when a petitioner claimed that another party's conduct violated the Communications Act without stating that Commission policies to the contrary also

conflicted with the Communications Act. *Id.* at 80 (discussing *MCI Telecomm. Corp. v. FCC*, 10 F.3d 842 (D.C. Cir. 1993); *Nat'l Ass'n for Better Broad. v. FCC*, 830 F.2d 270 (D.C. Cir. 1987)). But FiberTower's argument to the Commission was that the "build out" policy was unwise, and that argument did not "necessarily impl[y]" that the policy was also legally impermissible.

Because FiberTower failed to present its § 309(j)(4)(B) argument to the Commission, the Commission never had an opportunity to pass on it, and FiberTower thereby failed to exhaust its administrative remedies. The argument that the construction requirement conflicts with § 309(j)(4)(B) is therefore barred under § 405(a) and not properly before the court. *See Fresno Mobile Radio, Inc. v. FCC*, 165 F.3d 965, 972 (D.C. Cir. 1999); *Bartholdi Cable*, 114 F.3d at 279–80.

## III.

FiberTower also challenges the Commission's interpretation of "substantial service" as requiring construction as a matter of law, on the ground that it conflicts with the rule originally promulgated by the Commission, and as applied to forty-two license renewal applications, where substantial service showings stated construction had occurred.

## A.

In adopting the substantial service standard as the condition for license renewal in the 39 GHz and 24 GHz bands, the Commission emphasized the need for "flexibility in meeting the[] performance requirement" and rejected proposals to require a specific number of constructed links per market population or geographic area, because "such a build-out requirement would be unduly restrictive and burdensome." *39 GHz Order*, ¶¶ 42, 43; *see 24 GHz Order*, ¶¶ 37–38. In

FiberTower's view, by interpreting "substantial service" to include a rigid construction requirement, the Commission adopted the very inflexible build-out requirements that it rejected during the rulemaking.

The regulations define "24 GHz Service" as involving constructed links. *See* 47 C.F.R. § 101.3. In the 39 GHz band, a "substantial service showing should include, but not be limited to" descriptions of "current service in terms of geographic coverage; . . . population served, as well as any additional service provided during the license term," and the "licensee's investments in its system(s) (type of facilities constructed and their operational status is required)." *Id.* § 101.17(a)(1), (2), (3). Similar materials suffice for the 24 GHz band: "at a minimum," a "report, maps and other supporting documents describing [the licensee's] current service in terms of geographic coverage and population," with the report to include "a description of the licensees' [sic] investments in its operations." *Id.* § 101.527(b)(1). Nothing in the text indicates that non-construction activities alone will suffice to show substantial service. It is true that the regulations contemplate the submission of information about activities other than construction, but that only suggests that non-construction activities are relevant, not that they alone can constitute substantial service.

The rulemakings show that in discussing the standard for the 39 GHz band, the Commission acknowledged that the types of services available from 39 GHz providers are "tremendously varied." *39 GHz Order*, ¶ 42. It decided not to apply to this band the then-existing general requirement to construct one link within 18 months of licensure, *id.* ¶ 39, and declined to replace it with "a *specific* build-out benchmark." *Id.* ¶ 43 (emphasis added). The performance standards that it rejected as too rigid involved specific build-out requirements — "four links per 100

square kilometers . . . within 18 months," "a specific number of links, increasing over time, per geographic area," or "a specific number of link installations based on the market's population." *Id.* ¶¶ 43, 44, 45. The Commission explained that the specificity of those construction requirements did "not adequately take into account the differences among licensees," *id.* ¶ 44, such as varying market size, population density, and services offered, *id.* ¶¶ 44–46. But in providing examples for what might satisfy substantial service, the Commission still described activities that involved link construction. *See 24 GHz Order*, ¶ 38; *39 GHz Order*, ¶¶ 42 & n.97, 46. For instance, its "examples of presumed substantial service" were "based on a specific number of links per population." *Id.* ¶ 42. The one "showing tailored to a particular type of operation" it described involved "giv[ing] greater weight to a high capacity link than is recognized by the specific build-out option." *Id.* ¶ 42 n.97. In addition, the Commission rejected "the arguments of some commenters that a build-out requirement should not be imposed" at all. *Id.* ¶ 50. The Commission did not state that the flexibility it sought in adopting "substantial service" as the performance standard extended to allowing license renewal where there had not been any construction. Rather, the Commission described its approach as a "build-out/renewal requirement[]" that would "give licensees a sufficient opportunity to construct their systems." *39 GHz Order*, ¶¶ 47, 49.

FiberTower's reference to other regulations that contrast "substantial service" with specific build-out requirements is also unavailing. Although these regulations list different types of "performance or build-out requirement[s]" — to include "e.g., a requirement that the licensee construct and operate one or more specific facilities, cover a certain percentage of geographic area, cover a certain percentage of population, or provide substantial service," 47 C.F.R. § 1.9020(d)(5); *see id.* § 1.9030(d)(5) (same); *id.* § 90.155(d) (similar); *id.* § 90.685(b)

12

(similar); *id.* § 24.203(a), (b) (similar) — they draw the same distinction the Commission drew in the *39 GHz Order* and *24 GHz Order* between substantial service and a specific amount of construction.

The fact that, as FiberTower points out, neither the regulations nor the rulemakings for the 39 or 24 GHz bands include a statement that construction of at least one link is required is of no moment. The Commission's interpretation is consistent with the text of the regulations and rulemaking records. And courts are to "defer to an agency's interpretation of its regulations, even in a legal brief, unless the interpretation is 'plainly erroneous or inconsistent with the regulation[s]' or there is any other 'reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Talk America, Inc. v. Mich. Bell Tel. Co.*, 131 S. Ct. 2254, 2261 (2011) (quoting *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 (2011) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997))); *see Rural Cellular Ass'n v. FCC*, 685 F.3d 1083, 1093 (D.C. Cir. 2012). FiberTower has not shown that the Commission's interpretation of the substantial service requirement is inconsistent with the regulatory text or the original rulemakings.

**B.**

FiberTower also contends that the Commission misapplied its substantial service interpretation with respect to forty-two license renewal applications. For those licenses, FiberTower submitted substantial service showings stating that links had been constructed and service was being provided in the license area. For example, the substantial service showing for license WMF848 stated that "FiberTower so far has one link built and operating at a school in Kansas City, Missouri, the geographic area of this license." FiberTower Spectrum Holdings, LLC, *Substantial Service Showing*, FRN 0019211895, at 8 (June 1,

2012). Neither of the challenged orders indicate an awareness of these construction notifications. The Bureau's substantial service analysis was predicated on the finding that there was no "construction of any facilities whatsoever" in any of the terminated license areas. *Bureau Order*, ¶ 22. The Commission, in turn, adopted the Bureau's conclusion that "FiberTower was seeking a finding of substantial service without any construction of facilities," *Order*, ¶ 38, and acted on the basis of its understanding that the Bureau "did not take action against any license where construction had been reported, whether or not the construction met a safe harbor," *id*. ¶ 33 n.133.

The Commission responds on appeal that FiberTower's as applied challenge is barred because FiberTower failed to present this argument to the Commission. FiberTower stated in its Application for Review that:

> The Bureau erred as a matter of fact when it found that no facilities have been built-out in FiberTower's licensed areas. The record demonstrates that, as of June 1, 2012, a significant amount of construction had occurred in many of FiberTower's license areas that the Bureau identified for termination.

Application for Review, at 23. This statement would appear to alert the Commission to FiberTower's claim of factual error, and afford the Commission an "opportunity to pass" on the issue, as required by § 405(a). It also "concisely" and "plainly" states the question for review, as the Commission's rules require. 47 C.F.R. § 1.115(b)(1). The Commission points out, not unreasonably, that the statement of error in FiberTower's Application for Review was generic and failed to identify the specific licenses that FiberTower claims were erroneously canceled. After all, FiberTower submitted a large number of

applications for license renewal with substantial service showings, and in seeking Commission review, FiberTower could have listed by license number the forty-two license areas in which it claimed there had been actual construction. To state the obvious, it was in FiberTower's interest to facilitate the Commission's ability to locate these licenses.

But the Commission overstates its position in maintaining that it "'had no notice of' FiberTower's 'specific objections.'" Appellee's Br. 39 (quoting *U.S. Airwaves, Inc. v. FCC*, 232 F.3d 227, 236 (D.C. Cir. 2000)). The exhaustion cases on which the Commission relies involved arguments that had not been made at all in the Application for Review or Petition for Reconsideration. *See Environmentel, LLC v. FCC*, 661 F.3d 80, 84 (D.C. Cir. 2011); *Qwest Corp. v. FCC*, 482 F.3d 471, 478 (D.C. Cir. 2007); *U.S. Airwaves*, 232 F.3d at 236; *Bartholdi Cable*, 114 F.3d at 279. Here, FiberTower alerted the Commission to its argument of factual error in the Application for Review. Because the Commission requires that substantial service showings be made on a license-by-license basis, *see Order*, ¶ 39 n.155, it ill behooves the Commission to imply that it can cancel licenses for failure to show any construction without reviewing each substantial service showing. To the extent the Commission maintains on appeal that the forty-two license renewal applications do not adequately demonstrate substantial service because they failed to "demonstrat[e] the extent of [the constructed] facilities or that those facilities served customers or provided internal service," Appellee's Br. 39–40, that was not the basis on which the Commission denied the renewal applications and cannot provide the basis for upholding the Commission's action. *See SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943).

We therefore vacate the Commission's orders denying renewal applications for the forty-two licenses for which

FiberTower submitted substantial service showings stating there had been construction. "An agency action is arbitrary and capricious if it rests upon a factual premise that is unsupported by substantial evidence." *Ctr. For Auto Safety v. Fed. Highway Admin.*, 956 F.2d 309, 314 (D.C. Cir. 1992). Upon remand the Commission can determine whether there was substantial service for those licenses.

## IV.

FiberTower's other challenges relate to the denials of its requests for an extension or waiver of the substantial service deadline beyond June 1, 2012. In view of our conclusion in Part III.B, *supra*, we vacate the orders denying these requests, so that the Commission may rule on FiberTower's requests in light of an accurate understanding of the license renewal record. Although the burden for challenging the Commission's denial of waiver and extension is heavy, *see Morris Commc'ns, Inc. v. FCC*, 566 F.3d 184, 188 (D.C. Cir. 2009), the Commission has acknowledged that the proportion of licenses that have been built out may be relevant to its extension analysis. *See Order*, ¶ 26 (discussing *2 Lightspeed LP*, File Nos. 0005222510–0005222513 (July 23, 2012)).

Accordingly, we affirm in part and we remand for the Commission to determine whether there was substantial service for the forty-two licenses in which FiberTower stated there had been construction, and to consider anew FiberTower's requests for an extension or waiver of the substantial service requirement based on an accurate understanding of the renewal record.